## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**RICHARD LEE PAIVA**, *pro se*,
    *Petitioner*

v.                                                                  **C.A. No. 1:17-mc-00014-JJM**

**RHODE ISLAND DEPARTMENT OF CORRECTIONS**,
    *Respondent*

### RHODE ISLAND DEPARTMENT OF CORRECTIONS' SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO SHOW CAUSE ORDER

The Rhode Island Department of Corrections ("RIDOC") hereby files this Memorandum of Law in response to this Court's Show Cause Order entered February 20, 2019 (ECF 29). According to this Court's Order, the RIDOC should show cause why it should not be held in contempt, or otherwise sanctioned, for unilaterally changing the Morris Rules set forth without an order from this Court – in particular, limits on the length of punitive segregation and the composition of the Disciplinary Board.  (ECF 29).

During a March 26, 2019 hearing on this Show Cause Order, this Court observed, "the question for the Court is whether [the RIDOC is] following the Court's order."  Transcript, p. 15. Resolution of this question requires consideration of: (1) the relevant court order in question, (2) whether the RIDOC violated the relevant court order in question, and (3) if the RIDOC did violate the relevant court order in question, whether it should be held in contempt of court, a standard that requires, *inter alia*, the relevant court order to be "clear and unambiguous."  *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 47 (1st Cir. 2016).

## I.      HISTORICAL REVIEW OF THE MORRIS RULES

In October 1969, a class action lawsuit was filed on behalf of present and future inmates

at the Adult Correctional Institution ("ACI").  As resolution of this matter, the parties entered

into an interim decree (issued on March 10, 1970) that established new prison condition

procedures at the ACI.  As described by Judge Pettine, these interim Rules:

> establish rules of law which must be followed.  If they are not, enforcement rights
> may be sought in this court for at least an eighteen-month period from the date of
> entry of this decision.  This retention of jurisdiction will offer the opportunity to
> revise and improve these Regulations as their practical application may require or
> appear desirable.

*Morris v. Travisono*, 310 F.Supp. 857, 861 (D.R.I. 1970) (hereafter *Morris I*).

On April 20, 1972, Chief Judge Pettine issued the final decree.  In relevant part, this final

decree ordered:

> plaintiffs and members of their class are entitled to those minimum procedural
> safeguards with respect to classification and discipline as are set out in the
> classification and disciplinary rules of the 'Regulations Governing Disciplinary,
> Classification, and Mail Procedures for all Inmates at the Adult Correctional
> Institutions, State of Rhode Island,' part of the copy attached hereto which
> Defendants agree to promulgate pursuant to § 42-35-1, § 42-35-3(a) et seq. of the
> Rhode Island General Laws within ninety days from the date of this order and
> incorporate into a new inmate guide within a reasonable time thereafter.

As noted decades later, "the Morris Rules are not contained in or part of a decree issued by this

Court" and "Judge Pettine attached a copy of the Morris Rules to his Order * * * so that the text

of those Rules would be published and the terms thereof known to all, but the Rules were not

integrated into any decree of this Court."  *Doctor v. Wall*, 143 F.Supp.2d 203, 204 (D.R.I. 2001)

(Lagueux, J.).  Over fifteen years after *Doctor*, a Magistrate Judge of this Court similarly

observed that Chief Judge Pettine "refrained from issuing an injunction because the prison

administration agreed to promulgate the Rules within ninety days."  *Pona v. Weeden*, 2017 WL

2

3279012 * 3 (D.R.I. 2017) (Sullivan, M.J.).  In October 1972, the Morris Rules were promulgated pursuant to the Rhode Island Administrative Procedures Act ("APA").  *Id.*

In hindsight, the promulgation of the Rules pursuant to the APA began more than forty years of litigation that continues with this hearing.  A year after promulgation (in 1973), the RIDOC unilaterally suspended the Morris Rules following a serious security situation at the ACI resulting in two deaths, including a correctional officer.  *Id.*  When the Morris Rules were not reinstated following the conclusion of the emergency situation, the class action returned to the District Court.  As written by Chief Judge Pettine in that case, "[i]n granting injunctive relief to the plaintiffs, this court tracks the language in *Palmigiano v. Mullen* (1st Cir. 1974) 491 F.2d 978 and stresses that only '…unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise to a supportable claim of constitutional deprivation. . . ' [citation omitted] shall have cognizance before this court."  *Morris v. Travisono*, 373 F.Supp. 177, 184-85 (D.R.I. 1974) (*Morris II*) (alternations in original).  Further, in an "Addendum to Opinion and Order," the Court elucidated:

> *[c]onstitutional strictures* rightfully limit the scope of the Court's intervention in disciplinary, classification and mail procedures for inmates at the 'ACI.'  *Only a claim of constitutional dimension can actuate this Court's jurisdiction*; however, this is not always subject to simple solution.  *Therefore, realizing that in a prison setting prison officials 'must be free to make a wide range of decisions' without the coercive fear of violating the Court's injunctive restrictions; that the failure to identify the unusual case markedly departing from the minimal procedures established by this Court may well be caused by a misinterpretation or lack of understanding of the true nature of the case and the constitutional problems involved; that not all changes in the 'Morris Rules' should require the approval of this Court*, I shall submit to these litigants for consideration and comment, prior to promulgation as a court order, a procedural guideline and suggested format for the changing or modification of the Rules by the prison officials without first seeking the sanction of this Court.

*Id.*  (Emphases added).  As such, the injunctive relief issued by the District Court concerns "only '…unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise

to a supportable claim of constitutional deprivation." *Id*. at 184-85.  The RIDOC appealed the District Court's order enjoining the suspension of the Morris Rules and the Court of Appeals affirmed; but in doing so, the Court of Appeals' analysis is of particular import.

Although the Morris Rules were conceived through the District Court's April 20, 1972 Order, the Court of Appeals noted that under state law – the APA – "a state agency finding 'an imminent peril to the public health, safety or welfare' may adopt without notice an emergency rule for 120 days, renewable for 90 days." *Morris v. Travisono*, 509 F.2d 1358, 1361 (1ˢᵗ Cir. 1975) (*Morris III*).  Laying the foundation for the legal issues presented to this Court through the instant petition, the Court of Appeals added that the Morris Rules "embodied a binding declaration of *constitutional rights* and were part of a judgment." *Palmigiano v. Mullen*, 491 F.2d 978, 980 (1ˢᵗ Cir. 1974) (emphasis added).  While the Morris Rules may have been arguably incorporated into the April 20, 1972 Judgment, both the District Court and the Court of Appeals recognized this incorporation only to the extent that certain Morris Rules established "constitutional rights."

While Morris' constitutional rights may have been incorporated within the District Court's Judgment, there can be no doubt that the non-constitutional Morris Rules are NOT incorporated and may be subject to unilateral modification.  For instance, the Court of Appeals noted that on November 16, 1973 – over a year after Chief Judge Pettine's Order – the RIDOC "promulgated new rules of procedural due process under the Rhode Island Administrative Procedures Act." *Morris III*, 509 F.2d at 1361-62.  To be sure, the District Court "reserved ruling on the adequacy of these revised rules as a substitute for the Morris Rules," *id*. at 1362, but if the Morris Rules – as a whole – represented a federal court decree that could not be unilaterally altered, it must be asked why the District Court and the Court of Appeals side-

4

stepped the RIDOC's revision rather than squashing its unilateral altering of a court order. Even more so – in the ensuing sentences – the Court of Appeals expressly left open the possibility that the RIDOC could modify the Morris Rules without court intervention, provided these alterations were "not of a *constitutional dimension*." *Id*. (Emphasis added). The Court of Appeals explained:

> [p]rison officials must not be locked into restrictions on their ability to make a wide range of decisions *not of constitutional dimension*. [citation omitted]. But access to the district court has been, and remains, available to a party seeking to establish what in the Morris Rules *is now constitutionally necessary and what is not*. In an addendum to its opinion in this case, the district court recognized that not all changes in the Morris Rules should require its approval and expressed its intention to promulgate, with the help of the parties, a procedural guideline by which prison officials may change the Morris Rules without first seeking the sanction of the district court.

*Id*. (Emphases added).

Five years later, in *Morris v. Tavisono*, 499 F.Supp. 149 (D.R.I. 1980) (*Morris IV*), another inmate – John Carillo who had been housed in segregated or isolated confinement for approximately 7 years – brought an action pursuant to 42 U.S.C. § 1983, as well as a motion to adjudge the RIDOC in civil contempt for failing to comply with the April 20, 1972 decree. Chief Judge Pettine found that the RIDOC violated several provisions of the Morris Rules, namely failing to devise a treatment and rehabilitation plan for Inmate Carillo, failing to provide Inmate Carillo certain privileges due a "C" category inmate, and by employing inappropriate criteria in continuing to classify Inmate Carillo as a "C" category inmate. Chief Judge Pettine ordered the RIDOC to comply with the Morris Rules and that the failure to do so would result in a finding of contempt. *Id*. at 159.

## II.   <u>SUBSEQUENT CASES HAVE INTERPRETTED THE MORRIS RULES</u>

Following *Morris IV*, this Court, as well as the Court of Appeals, have had numerous opportunities to examine inmate complaints that the RIDOC violated the Morris Rules. These cases appear to universally recognize that enforcement of the Morris Rules – especially where non-constitutional issues are raised – is a *state remedy*. As an example, in *Rodi v. Ventetuolo*, 941 F.2d 22, 26-27 (1st Cir. 1991), after reviewing the history of the Morris Rules, the Court of Appeals observed:

> the Morris Rules were promulgated under specific authority delegated by state statute. In 1970, as agreed in an interim consent decree, the Morris Rules were initially issued by the official responsible for managing the ACI, acting under authority of R.I. Gen. Laws § 13–1–2 (1956; repealed) to promulgate 'lawful and necessary rules in regulations.' *See Morris I*, 310 F.Supp. at 863. In the final consent decree, entered on April 20, 1972, the State agreed to promulgate the rules pursuant to the Rhode Island Administrative Procedures Act (APA), R.I. Gen. Laws §§ 42–35–1 to 42–35–18. That circumstance materialized on October 10, 1972. *See Morris III,* 509 F.2d at 1359; *Morris II,* 373 F.Supp. at 179. The Morris Rules have remained in full force and effect since that time.

Immediately thereafter, the Court of Appeals explained that there was "no doubt that the regulations have the necessary *state* legislative sanction. Because the Morris Rules were promulgated pursuant to specifically conferred legislative authorization, they are legislative rules which, under Rhode Island's own jurisprudence, have the force and effect of law." *Id*. at 27.

The Court of Appeals continued that the Morris Rules themselves were NOT incorporated into the consent decree, explaining "the fact that the Morris Rules were promulgated in consequence of a consent decree lacks decretory significance." *Id*. The Court continued that:

> the looming presence of a consent decree does not make the rules court-created rather than state-created in any meaningful sense, for 'the voluntary nature of a consent decree is its most fundamental characteristic. [citation omitted]. Nor does the fact that the rules cannot be modified without application to a federal

judge make them any less volitional; that condition, after all, was freely agreed to by the State as part and parcel of the consent decree.

*Id*. at 27.

A year later, Inmate Cugini filed a motion to adjudge the RIDOC in contempt because it denied him access to minimum/work release status in violation of the Morris Rules. *See Cugini v. Venteluolo*, 781 F.Supp. 107, 108 (D.R.I. 1992) (Lagueux, J.). After reviewing the Morris Rules history and observing that the "Morris Rules have force and effect of state law," *id*. at 112 (citing *Rodi*, 941 F.2d at 26-27), Judge Lagueux observed:

> [w]hereas 'access to the district court has been, and remains, available to a party seeking to establish what in the Morris Rules is *now constitutionally necessary and what is not*,' Morris III, 509 F2d at 1362, *an inmate alleging only violations of the classification procedures should be relegated to state court. This Court concludes, therefore, that state prisoner actions alleging violations of the Morris rules or seeking enforcement of those rules properly belong in state court because the rules were promulgated under state law and were meant to be dealt with by state machinery.*

*Id*. at 112-13. Because 'Cugini has not brought a justiciable federal claim before this Court,' the RIDOC's motion to dismiss was granted. *Id*. at 114 (emphases added). This decision comports with a subsequent Court of Appeals' decision. *See Lother v. Vose*, 89 F.3d 823 (1ˢᵗ Cir. 1996) (unpublished) ("both the Morris rules and the Rhode Island Administrative Procedures Act are state laws, the alleged violation of either, in and of itself, is not a sufficient predicate to sustain a damage action under federal law. Complaints of such violations therefore should be directed to state court.").

Still later, in another case, Judge Lagueux adopted a report and recommendation dismissing another inmate's motion to adjudge the RIDOC in contempt. In relevant part, Judge Lagueux explained:

> [i]t should be clear from this Court's decision in *Cugini v. Venteuolo,* 781 F.Supp. 107 (D.R.I.1992) that an inmate at the Adult Correctional Institutions (ACI) does

not have a cause of action in this District Court for contempt against personnel of the Rhode Island Department of Corrections for an alleged violation of the Morris Rules. *This is so because the Morris Rules are not contained in or part of a decree issued by this Court. The Morris Rules were regulations adopted by the Rhode Island Department of Corrections under the Rhode Island Administrative Procedures Act pursuant to an agreement with the inmate class in the Morris case. Judge Pettine attached a copy of the Morris Rules to his Order in Morris IV so that the text of those Rules would be published and the terms thereof known to all, but the rules were not integrated into any decree of this Court.* In that case, Judge Pettine ordered that the *Morris* Rules remain in effect at the ACI, pursuant to the agreement of the parties in the *Morris* case. But, those Rules are *state* rules and regulations that govern the conduct of classification and disciplinary proceedings at the ACI, and are to be enforced, if at all, by state machinery.

*Doctor v. Wall*, 143 F. Supp. 2d 203, 204 (D.R.I. 2001) (first emphasis added, second emphasis in original).

Respectfully, even this Court has determined that an inmate who brings an action pursuant to 42 U.S.C. § 1983 alleging that the RIDOC "illegally abolish[ed] the [Morris Rules]" had "failed to set forth a justiciable federal question to establish subject matter jurisdiction." *Akinrinola v. Wall*, 2016 WL 6462203 * 1 (D.R.I. 2016) (McConnell, J.).  In doing so, this Court explained:

it is well established that complaints rooted in violations of the Morris Rules must be brought in state court.  *Lother v. Vose*, 89 F.3d 823 (Table) (1st Cir. 1996). While the Morris Rules remain in effect, 'those Rules are state rules and regulations that govern the conduct of classification and disciplinary proceedings at the ACI, and are to be enforced, if at all, by state machinery.'  *Doctor v. Wall*, 143 F.Supp. 2d 203, 204 (D.R.I. 2001).

*Id.* [1]  Later this Court explained:

---

[1] As made clear, *supra*, "the fact that the Morris Rules were promulgated in consequence of a consent decree lacks decretory significance," *Rodi*, 941 F.2d at 27, and "the Morris rules and the Rhode Island Administrative Procedures Act are state laws."  *Lother*, 89 F.3d at 823.  In the absence of a specific abrogation by Congress or consent or waiver by Rhode Island, the Morris Rules are unenforceable against the State under the Eleventh Amendment. Under the Eleventh Amendment, this Court lacks jurisdiction to determine whether RIDOC has failed to comply with state law. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  And, moreover, the Rhode Island Supreme Court has made clear that

8

[a] defendant may state a viable claim for violation of the Morris Rules in federal court, but he '*must make an allegation of a federal constitutional violation and bring an action under 42 U.S.C. § 1983 in order to be heard in this Court*.' *Doctor*, 143 F.Supp. 2d at 205. Principles of due process, however, will not be implicated unless the punishment in segregation causes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandlin v. Conner*, 515 U.S. 472, 484 (1995).

*Akinrinola*, 2016 WL 6462203 * 2 (emphasis added). *See also Lother,* 89 F.3d 823 (Table) **(1st Cir. 1996)** ("the Morris rules and the Rhode Island Administrative Procedure Acts are state laws"); *Pona*, 2017 WL 3279012 * 5 (D.R.I. 2017) (Sullivan, M.J.) ("At bottom, the cases from this Court are clear: this Court lacks subject matter jurisdiction over alleged violations of the Morris Rules, whether brought as a motion for contempt or as a § 1983 claim").

## ARGUMENT

### III. RIDOC HAS NOT WILLFULLY VIOLATED A CLEAR AND UNAMBIGUOUS COURT ORDER

#### A. The April 20, 1972 Order

On April 20, 1972, the District Court entered an Order stating:

[t]hat plaintiffs and members of their class are entitled to those minimum procedural safeguards with respect to classification and discipline as are set out in the classification and disciplinary rules of the 'Regulations Governing Disciplinary, Classification, and Mail and Procedures for all Inmates at the Adult Correctional Institutions, State of Rhode Island', part of the copy attached hereto which Defendants agree to promulgate pursuant to sec. 42-35-1, sec. 42-35-3(a) et seq. of the Rhode Island General Laws within ninety days from the date of this order and incorporate into a new guide within a reasonable time thereafter.

---

issues surrounding compliance with the APA may not be reviewed in federal court as violative of the 11th Amendment. *See Jefferson v. Mora*n, 479 A.2d 734 (R.I. 1984). Since the State has neither waived its 11th Amendment immunity through the APA or through the Morris Rules, this Court lacks subject-matter jurisdiction.

*Morris II*, 373 F. Supp. at 179 n.1.  After the RIDOC unilaterally suspended the Morris Rules, Chief Judge Pettine subsequently entered an injunction, stressing that "only '…unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise to a supportable claim of constitutional deprivation' [citation omitted] shall have cognizance before this court." *Id.* at 184.  Two points must be made concerning the April 20, 1972 Order, as subsequently modified by Chief Judge Pettine.

The first and most important is that the April 20, 1972 Decree does not incorporate the Morris Rules.  The First Circuit made this clear in 1991 when it stated "the Morris Rules were promulgated under specific authority delegated by state statute" and "the fact that the Morris Rules were promulgated in consequence of a consent decree lacks decretory significance."  *Rodi*, 941 F.2d at 26-27.  In *Rodi*, the Court of Appeals continued that "the looming presence of a consent decree does not make the rules court-created rather than state-created in any meaningful sense[.]"  *Id.* at 27.  *See also Lother*, 89 F.3d at 823 (unpublished) ("the Morris rules and the Rhode Island Administrative Procedures Act are state laws").  Indeed, the fact that Chief Judge Pettine issued his order on April 20, 1972, but the Morris Rules would not be promulgated for an additional six months, belies any conclusion that the Morris Rules could have been incorporated within the April 20, 1972 Order.  *See Morris II*, 373 F.Supp. at 179 ("This was done on October 10, 1972 and then filed with the Secretary of State on October 12, 1972.").  This conclusion comports with the determination reached by Judge Lagueux over 15 years ago.  *See Doctor*, 143 F.Supp.2d at 204 ("This is so because the Morris Rules are not contained in or part of a decree issued by this Court.").

Second, to the extent that the Morris Rules are embodied within the April 20, 1972 Order, *but see, supra,* the incorporated Rules are limited to those that are constitutional in nature.

10

Support for this conclusion can be gleaned from several sources, including the April 20, 1972

Order.  *See Morris II*, 373 F. Supp. at 179 n.1 ("[t]hat plaintiffs and members of their class are

entitled to those *minimum procedural safeguards* with respect to classification and discipline as

are set out in the classification and disciplinary rules of the 'Regulations Governing Disciplinary,

Classification, and Mail and Procedures for all Inmates at the Adult Correctional Institutions,

State of Rhode Island'") (emphasis added).  Additionally, in issuing the injunction, following the

suspension of the Morris Rules, Chief Judge Pettine stressed that the injunction reached "only

'…unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise

to a supportable claim of constitutional deprivation.'"  *Id*. at 184.  Only these "unusual cases,"

Chief Judge Pettine stated, "shall have cognizance before this court."  *Id*.  In its Addendum to the

Opinion and Order, Chief Judge Pettine continued that:

> [c]onstitutional strictures rightfully limit the scope of the Court's intervention in
> disciplinary, classification and mail procedures for inmates at the 'ACI.'  *Only a
> claim of constitutional dimension can actuate this Court's jurisdiction*; however,
> this is not always subject to simple solution.  *Therefore, realizing that in a prison
> setting prison officials 'must be free to make a wide range of decisions' without
> the coercive fear of violating the Court's injunctive restrictions; that the failure to
> identify the unusual case markedly departing from the minimal procedures
> established by this Court may well be caused by a misinterpretation or lack of
> understanding of the true nature of the case and the constitutional problems
> involved; that not all changes in the 'Morris Rules' should require the approval
> of this Court*, I shall submit to these litigants for consideration and comment, prior
> to promulgation as a court order, a procedural guideline and suggested format for
> the changing or modification of the Rules by the prison officials without first
> seeking the sanction of this Court.

*Id*. at 185 (emphasis added).  While it is less than clear whether Chief Judge Pettine ever

promulgated such an order, it is pellucid that Chief Judge Pettine was focused upon the "unusual

case markedly departing from the minimal procedures established by this Court" and that the

Court was of the opinion that "not all changes in the 'Morris Rules' should require the approval

of this Court."  *Id*.

In affirming the District Court's order, the Court of Appeals explained that "[t]he Morris Rules * * * embodied a binding declaration of *constitutional rights* and were part of a judgment[.]"  *Morris III*, 509 F.2d at 1361 (emphasis added).  The Court continued that:

> [p]rison officials must not be locked into restrictions on their ability to make a wide range of decisions *not of constitutional dimension*.  [citation omitted].  But access to the district court has been, and remains, available to a party seeking to establish what in the Morris Rules *is now constitutionally necessary and what is not*.

*Id*. at 1362.  As such, to the extent that the Morris Rules are incorporated into the April 20, 1972 Order, this embodiment is limited to those Rules that are constitutional in nature.

**B.  The RIDOC cannot be held in contempt for violating the April 20 1972 Order**

In recognition of the contempt power's virility and damage potential, courts have created a number of prudential principles designed to oversee its deployment. In levying contempt sanctions, the court must first exercise the least possible power suitable to achieve the end proposed. *See Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991) (citing *Spallone v. United States*, 493 U.S. 265 (1990)); *see also Shillitani v. United States*, 384 U.S. 364, 371 (1966). Second, "a complainant must prove civil contempt by clear and convincing evidence." *Langton*, 928 F.2d at 1220. "Civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." *Project B.A.S.I.C.*, 947 F.2d at 16; *see also NBA Properties, Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990). Related to this requirement is the principle that any ambiguities or uncertainties in such a court order mandates that the order at issue be read in a light favorable to the person charged with contempt. *Kemp,* 947 F.2d at 16 (citing *NBA Properties*, 895 F.2d at 32). Thus, an order is clear and unambiguous where the putative contemnor is "able to ascertain from the four corners of the order precisely what acts are forbidden." *Gilday v. Dubois*, 124 F.3d 277, 282 (1st Cir. 1997) (citation omitted).

12

As detailed above, the RIDOC submits that it has not violated the April 20, 1972 Order because: (1) the Morris Rules are not incorporated into the April 20, 1972 Order and (2) even if incorporated, the April 20, 1972 Order only incorporated those due process requirements constitutionally required.  As such, the narrow issue before this Court is whether the RIDOC should be held in contempt when Paiva was presented to a single member of the Disciplinary Board and when he was held in segregated confinement for more than 30 days.  With respect to both issues, there can be no question that the RIDOC did not violate a clear and unambiguous order and that Paiva's complaints are not constitutional in nature.

For over 15 years, judicial authority has existed in this jurisdiction to support the RIDOC's position.  In particular, in *Doctor*, 143 F.Supp.2d at 204, Judge Lagueux explained:

> [i]t should be clear from this Court's decision in *Cugini v. Ventetuolo*, 781 F.Supp. 107 (D.R.I.1992) that an inmate at the Adult Correctional Institutions (ACI) does not have a cause of action in this District Court for contempt against personnel of the Rhode Island Department of Corrections for an alleged violation of the Morris Rules. *This is so because the Morris Rules are not contained in or part of a decree issued by this Court. The Morris Rules were regulations adopted by the Rhode Island Department of Corrections under the Rhode Island Administrative Procedures Act pursuant to an agreement with the inmate class in the Morris case. Judge Pettine attached a copy of the Morris Rules to his Order in Morris IV so that the text of those Rules would be published and the terms thereof known to all, but the rules were not integrated into any decree of this Court*. In that case, Judge Pettine ordered that the *Morris* Rules remain in effect at the ACI, pursuant to the agreement of the parties in the *Morris* case. But, those Rules are *state* rules and regulations that govern the conduct of classification and disciplinary proceedings at the ACI, and are to be enforced, if at all, by state machinery.

(First emphasis added, second emphasis in original).  Even this Court has acknowledged that:

> [a]t some point the courts here began to say, well, you can't file a motion for contempt based on the Morris Rules because they're state rules and Judge Lagueux's famous opinion that numerous, including myself, right, numerous judges, every judge here has – on the District Court level has consistently said since that time, oh, you can't file a contempt motion for the Morris Rules, and we cite Judge Lagueux's opinion from way back[.]  Transcript, March 26, 2019, p. 16-17.  *See* Exhibit A.

Respectfully, considering the precedent in this jurisdiction for – at least – the last fifteen years, namely that "the Morris rules are not contained in or part of a decree issued by this Court," *id.*, there can be no doubt that the RIDOC cannot be held in contempt or otherwise sanctioned for following this precedent.

### IV.   PAIVA'S ALLEGATIONS DO NOT IMPLICATE CONSTITUTIONAL RIGHTS

Paiva challenges certain provisions contained in RIDOC's disciplinary policy, created long after the Morris cases, simply on the basis that certain RIDOC policies are *inconsistent* with the Morris Rules.  However, as detailed above, to the extent that the RIDOC policies are inconsistent with the Morris Rules, these RIDOC policies do not reach a constitutional dimension or infringe on Paiva's constitutional rights.

The viability of claims alleging a deprivation of a liberty interest based on an inmate being ordered to punitive segregation must begin with the well-settled principle that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court of law. *See Sandin v. Conner*, 515 U.S. 472, 485-86 (1995) (disciplinary segregation, without more, does not implicate protected liberty interest so as to entitle prisoners to procedural protections of Due Process Clause).

The Supreme Court of the United States has stated that "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Id.* at 480.  The Court specifically rejected the claim that an inmate has a right to remain in general

population and stated that remaining in general population is not a liberty interest "protected by the Due Process Clause on the authority of *Meachum*, *Montanye*, and *Vitek*." *Id.*   In *Meachum v. Fano*, the Supreme Court related that the:

> Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one institution is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated.  427 U.S. 215, 225 (1976).

In *Sandin*, the Court went on to explain that the Due Process Clause will not be implicated unless "while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This is because "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Goddard v. Oden*, 2015 U.S. Dist. LEXIS 39370, at *5 (D.R.I. Mar. 9, 2015) (*quoting Price v. Johnston*, 334 U.S. 266, 285 (1948)).  This includes discipline by prison officials for misconduct which clearly "falls within the expected perimeters of the sentence imposed by a court of law." *Id.*  Accordingly, "[o]nly changes in prison conditions resulting from discipline imposed without appropriate due process that constitute 'atypical' and 'significant' hardships sufficient to give rise to the loss of a liberty interest are *potentially actionable* under § 1983." *Id.* (emphasis added).

This Court has stated that "[t]o implicate a liberty interest protected by the Due Process Clause, a plaintiff must allege a deprivation that is 'atypical and significant on the inmate in relation to the ordinary incidents of prison life.'" *Williams*, 2006 U.S. Dist. LEXIS 101809 at *7. In *Williams*, this Court determined that sanctioning an inmate to twenty-one (21) days of punitive

segregation "fail[s] to come within the reach of the 'atypical' and 'significant' benchmark which would implicate a liberty interest protected by the Fourteenth Amendment." *Id.*   Likewise in *Goddard*, this Court found that placement in disciplinary segregation for "an extra 30 days" does not implicate a liberty interest. *See Goddard*, 2015 U.S. Dist. LEXIS 39370, at *6-7.   Similarly, this Court has stated that placement in punitive segregation for one (1) year by itself is not sufficient to implicate a liberty interest. *See Benbow v. Weeden*, 2013 U.S. Dist. LEXIS 109690, at *8 (D.R.I. July 10, 2013), *Harris v. Perry*, 2015 U.S. Dist. LEXIS 107240, (D.R.I. August 14, 2015).   This Court explained in *Benbow* and *Harris* that because plaintiff failed to allege "plausible facts permitting the inference that his year of disciplinary segregation constituted the loss of a liberty interest under *Sandin*, the due process allegations based on disciplinary segregation should be dismissed for failure to state a claim." *Id.*

Here, Plaintiff alleges that the imposition of 45-60 days in segregation on three occasions during 2014 and 2016 were not permitted by the Morris Rules, and accordingly his rights were violated.   However, such a disciplinary sentence that exceeds thirty days – by itself – does not implicate Paiva's constitutional rights.   *See id.*  (one year in segregation, by itself, fails to implicate due process).   Indeed, a recent survey by this Court of disciplinary sentences well in excess of the 45 to 60 days received by Paiva finds that:

> [c]ourts have recognized that extreme length of disciplinary confinement can be a significant factor in implicating liberty interest. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–99 & nn. 3–4 (7th Cir. 2009) (reversing dismissal and holding segregated confinement for 240 days potentially states claim to liberty interest); *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000) (segregation for 305 days "a sufficient departure from the ordinary incidents of prison life" to implicate liberty interest); *see also Magluta v. Samples,* 375 F.3d 1269, 1282 (11th Cir. 2004) (solitary confinement in small space with minimal contact with others for over 500 days satisfies *Sandin* standard).

16

*DuPonte v. Wall*, 288 F.Supp.3d 504, 509-10 (D.R.I. 2018) (McConnell, J.).  Paiva's claim that a disciplinary sentence in excess of 30 days, but not in excess of 60 days, implicated his constitutional rights must be dismissed.

In addition, Paiva alleges that he was placed in segregation but does not state any additional allegations that would create a protected liberty interest by indicating that his placement in segregation caused an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  Plaintiff's allegation that he was placed in segregation for a period of time that exceeds the Morris Rules is alone insufficient to implicate this Court's jurisdiction or the April 20, 1972 Order since, according to Chief Judge Pettine, "only '….unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise to a supportable claim of constitutional deprivation . . . ' [citation omitted] shall have cognizance before this court."  *Morris II*, 373 F.Supp. at 184.  As described above, Paiva's claim has no constitutional support.

Paiva also contends a violation of the Morris Rules in that RIDOC disciplinary policy permits disciplinary hearings to be conducted by a single superior officer, rather than by a 3-member board.  *See* Motion for Further Relief, P. 10.  Again, there is no constitutional entitlement to a disciplinary hearing being conducted by a 3-member board, nor does Paiva assert such a constitutional right.  Moreover, even if Paiva could state a protected liberty interest, he fails to detail how his procedural Due Process rights were deprived in being disciplined between 2014 and 2016.  The United States Supreme Court in *Wolff v. McDonald* detailed the process that is due to inmates facing discipline.  Inmates are to receive notice of the charges and the opportunity to be heard.  418 U.S. 539, 563-567 (1974).  Paiva alleges no defects in this respect and provides no argument that there is a constitutional requirement that a prison administrative discipline hearing

17

be held before a two or a three-member board.  Again, only '….unusual case[s], involving marked departure [from the 'Morris Rules'] which might give rise to a supportable claim of constitutional deprivation . . . ' [citation omitted] shall have cognizance before this court." *Morris II*, 373 F.Supp. at 184.

Accordingly, RIDOC's changes to the disciplinary process that contrasts provisions of the Morris Rules do not impact entitlements rising to a Constitutional dimension or the April 20, 1972 Order.  These alterations also do not constitute a marked departure from the Morris Rules, which would give rise to a supportable claim of constitutional deprivation necessitating this Court's intervention.  Paiva's motion for contempt and/or further relief should be denied.

## CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that this action be dismissed.

Respectfully Submitted,

Defendants,
RHODE ISLAND DEPARTMENT OF
CORRECTIONS
By Its Attorneys,

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Michael W. Field*

Michael W. Field (#5809)
Assistant Attorney General
Justin J. Sullivan, Esq. (#9770)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 S. Main St., Providence, RI 02903
Tel: (401) 274-4400 |
Ext. 2380 | mfield@riag.ri.gov
Ext. 2007 | jjsullivan@riag.ri.gov

DEFENDANTS

RHODE ISLAND DEPARTMENT OF
CORRECTIONS

/s/ *Michael B. Grant*

_____
Michael B. Grant, Esquire (#3864)
R.I Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
TEL: (401) 462-0145
FAX: (401) 462-2583

## **CERTIFICATE OF SERVICE**

      I hereby certify that on Wednesday, May 08, 2019 I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I further certify that on Wednesday, May 08, 2019  I caused the within to be hand delivered and mailed a true and accurate copy of the within document via U.S. mail, postage prepaid, to the following:

Richard Lee Paiva, pro se (ID# 86429)
Adult Corrections Institute
P.O. Box 8200
Cranston, RI 02920

                    /s/ *Michael B. Grant*