UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD LEE PAIVA,<br>    Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | C.A. No. 17-mc-14-JJM-LDA |
| RHODE ISLAND DEPARTMENT OF<br>CORRECTIONS,<br>    Defendant. | ) ) ) ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

This Court entered a permanent injunction in 1974 incorporating the "Morris

Rules"—a set of rules for due process involving inmate classifications and discipline

within the Rhode Island Adult Correctional Institutions ("ACI"). When entered, both

the United States District Court and the United States Court of Appeals for the First

Circuit (the "First Circuit") held that the Morris Rules, as a judicial decree, could not

be altered or suspended without an order of the Court. Yet, in the mid 1990's, the

Rhode Island Department of Corrections ("RIDOC") unilaterally and substantively

changed the Morris Rules without seeking an amendment or relief from the Court.

Richard Lee Paiva, an inmate subjected to discipline by the RIDOC in violation of the

Morris Rules, moves to hold the RIDOC in contempt for violating the Morris Rules

and for further relief as deemed necessary and proper.

## I.    BACKGROUND

*Procedural Background of this Motion*

Mr. Paiva petitioned this Court to enforce the Morris Rules that the Court established in 1970 in *Morris v. Travisono* (U.S.D.C. D.R.I., Civ. A. No. 4192). ECF No. 4.[1] He alleges that, in violation of this Court's injunction enshrining the Morris Rules, the RIDOC subjected him to segregation of more than thirty days, had his appeal of discipline heard by a single official, rather than the required three-member panel, and had his outgoing mail opened and read by the RIDOC. *See* ECF No. 4 at 2, ¶¶ 1-4; ECF No. 25-6.

Consistent with the opinions of the judicial officers of this District Court since 1996 on the enforceability by contempt of individual violations of the Morris Rules in federal court, the Court denied Mr. Paiva relief and dismissed his petition. ECF No. 1; Text Order dated April 20, 2017. Mr. Paiva appealed. ECF No. 10. The First Circuit reversed the dismissal and entered a judgment stating:

> Even assuming *Morris* is a closed case, that event in and of itself would not necessarily bar **a motion to address a claimed violation of an injunction if the injunction has not expired or been terminated**. Here, [Mr. Paiva's] motion alleges just such a violation. Given the absence of any indication in the present record that the injunction is no longer in effect, we believe it makes better sense for the district court to get RIDOC's response before considering whether dismissal is appropriate.

ECF No. 22 (emphasis added).

---

[1] This Court docketed Mr. Paiva's "Motion for Further Relief and Order to Show Cause" as a miscellaneous case, because the *Morris* case had been closed for decades. Mr. Paiva recently moved to be designated as the successor class representative in the *Morris* case. ECF No. 60. That motion was granted as unopposed. Text Order dated December 18, 2019.

After the remand, Mr. Paiva filed an "Amended Motion for Further Relief; Motion for Contempt." ECF No. 25. He supplemented the motion several times. *See* ECF Nos. 26, 31, 41, 54, and 55.[2] The Court ordered the RIDOC to show cause "why it should not be held in contempt, or otherwise sanctioned, for unilaterally changing the rules set forth without an order from this Court–in particular, limits on the length of punitive segregation and the composition of the Disciplinary Board." ECF No. 29 at 1. The RIDOC responded to the Court's show cause order and objected to Mr. Paiva's motions. ECF Nos. 27, 32, 35, and 53.

Mr. Paiva originally requested that the Court: "either adjudge the RIDOC in contempt and issue sanctions, or to issue a supplemental order ordering the RIDOC to re-promulgate the Morris Rules back into RIDOC policies, in their entirety and without modification and without undue delay." ECF No. 2 at 26. In his Amended Motion for Further Relief; Motion for Contempt, Mr. Paiva requests: (A) "a declaration declaring that the [RIDOC] violated the consent decree;" (B) "a declaration declaring that the [RIDOC] violated the 'Morris Rules' when the Petitioner was given more than thirty days in disciplinary segregation;" (C) "commanding the [RIDOC] to revise their disciplinary policy;" (D) "issue coercive sanctions;" (E) "award Petitioner his costs;" and (F) "award further relief as this Court deems fair and just" under 28 U.S.C. § 2202.[3] ECF No. 25-1 at 7-9. Mr. Paiva

---

[2] Mr. Paiva also filed an "Oral Motion for Costs." ECF No. 56. That motion was denied in open court on May 15, 2019. *See* Text Order dated December 18, 2019.

[3] Under 28 U.S.C. § 2202, a court issuing a declaratory judgment or decree has the authority to grant "[f]urther necessary or proper relief" under the judgment. *See*

subsequently specified that the "further relief" he seeks is the vacation and expungement from his institutional record of twenty-one disciplinary convictions. ECF No. 31 at 2; ECF No. 41 at 2.[4]

After being designated as the successor class representative, Mr. Paiva moved for leave from the Court to conduct limited post-judgment discovery in support of his motion for contempt and further relief. ECF No. 66.

*History of the Morris Rules as Binding on the RIDOC*

In March 1970, after extensive litigation and court-directed mediation, the Court issued a Consent Order that set forth "Regulations Governing Disciplinary and Classification Procedures at the Adult Correctional Institutions, State of Rhode Island." *Morris v. Travisono*, 310 F. Supp. 857, 865 (D.R.I 1970) ("*Morris I*"). The Court stated: ". . . these Regulations establish rules of law which must be followed." *Id.* at 861. The Regulations[5] (now commonly called the "Morris Rules") were "to become an interim decree of this court" and then a "final decree." *Id.* at 862.

---

*also Unión de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 59 (1st Cir. 2018).

[4] Mr. Paiva also asked this Court to "enter a declaration declaring that the [RIDOC's] current disciplinary policy is unconstitutional." ECF No. 25-1 at 8. Because Mr. Paiva did not bring an action under 42 U.S.C. § 1983 alleging a federal constitutional violation and instead filed motions for contempt and further relief, the Court need not, nor will it, address the constitutionality of the RIDOC's current disciplinary policy. *See Akinrinola v. Wall*, No. CV 16-370-M-LDA, 2016 WL 6462203, at *2 (D.R.I. Oct. 31, 2016) (citing *Doctor v. Wall*, 143 F. Supp. 2d 203, 205 (D.R.I. 2001)).

[5] The First Circuit described the Morris Rules as "a set of rules for due process within prison that was carefully shaped by prisoners and correctional administrators working together under the aegis of the District Court." *Palmigiano v. Baxter*, 487 F.2d 1280, 1286 (1st Cir. 1973), *vacated and rev'd on other grounds*, 425 U.S. 308 (1976).

The Morris Rules set forth a classification process and categories (A through D) (*Morris I* at 865-71); disciplinary procedures including a hearing before a disciplinary board of three members—the deputy warden and two members from the custody and treatment departments (*Id.* at 872); limits on placement in punitive segregation of thirty days (*Id.* at 874); and minimum standards of confinement while in punitive segregation. ECF No. 25-2 at 27.

On April 20, 1972, the Court entered its final decree and a declaratory judgment.[6] *See Morris v. Travisono*, 373 F. Supp. 177, 179 (D.R.I. 1974) ("*Morris II*"). The Court found this judgment "the authoritative final decree judicially determinative of the rights and obligations of the parties." *Id.* at 182.

Because an "extensive riot" occurred at the ACI in April 1973, the ACI suspended the Morris Rules, "without filing any Motion to modify or vacate [the] Court's judgment of April 20, 1972." *Morris II* at 179. After the rioting ended, the Morris Rules were not reinstated, prompting the prisoners to request reinstatement from the Court. *See id.* In reviewing this request, the Court found that its order "precluded the Defendants from summarily suspending the Rules." *Id.* at 182. In response to the RIDOC's suspension of the Morris Rules, the Court invoked its "residual power to now issue a permanent injunction." *Id.* The "permanent

---

[6] "ORDERED, ADJUDGED, DECLARED, AND DECRED. The Plaintiffs and members of their class are entitled to those minimum procedural safeguards with respect to classification and discipline as are set out in the classification and disciplinary rules of the 'Regulations Governing Disciplinary, Classifications, and Mail and Procedures for all inmates at the Adult Correctional Institutions . . . .'" *Morris II* at 179, n.1.

injunction [was] against suspension of the Morris Rules." *Morris v. Travisono*, 509 F.2d 1358, 1360 (1st Cir. 1975) ("*Morris III*").

In reviewing the District Court's permanent injunction incorporating the Morris Rules, the First Circuit chastised the RIDOC because it "simply determined, on [its] own initiative to scrap the [Morris] Rules and, in effect, to disregard the obligations imposed by the consent decree." *Morris III* at 1360.

> [W]e find inexplicable [D]efendants' failure to approach the Court in an effort to explain their difficulties and to secure an adjudication of their continuing obligations.  * * *  Where the state officials erred was in failing to accord proper deference to the judicial decree.  Distaste for the Rules did not allow defendants simply to disregard the court's judgment of April 20, 1972, and the Fourteenth Amendment rights declared under that judgment.  See 28 U.S.C. § 2201.  To the extent the Rules seemed unduly burdensome, the state had to seek their modification by legal means.  * * *  [T]he contention that the Morris Rules themselves may be eliminated under state law is without merit.  * * *  The Morris Rules, including the emergency provisions, embodied a binding declaration of constitutional rights and were part of a judgment;  * * *  Defendants cannot unilaterally order the elimination of rights in federal courts simply because the consent decree was to be enforced through state machinery.

*Id.* at 1361.

The next time the Morris Rules required court attention was five years later in 1980.  An ACI inmate asked the Court to adjudge the RIDOC in civil contempt for failing to follow the Morris Rules. *Morris v. Travisono*, 499 F. Supp. 149 (D.R.I. 1980) ("*Morris IV*").  The Court found the RIDOC had "violated several provisions of the Morris Rules." *Id.* at 157.  The Court ordered compliance and warned that "[f]ailure to comply shall result in a finding of contempt." *Id.* at 159.

A decade passes before the courts were confronted with a Morris Rule issue again. In 1991, the First Circuit, in finding that the Morris Rules "endowed inmates at the ACI . . . with a liberty interest in remaining in the general population,"[7] stated again the axiom that the Morris Rules "cannot be modified without application to a federal judge." *Rodi v. Ventetuolo*, 941 F.2d 22, 27-28 (1st Cir. 1991). In the opinion, the First Circuit noted that:

> The history of the Morris Rules reflects just such a process: the inmates agreed to drop their class action against prison officials and abandon their damage claims in exchange for the State's agreement to institute, and thereafter abide by, the Morris Rules. . . . Having willingly, if unenthusiastically, negotiated an end to adversarial litigation and thereby fathered the Morris Rules, the State cannot now disinherit the obligations which those rules impose by the simple expedient of claiming that the court created the Morris Rules by a sort of immaculate conception.

*Id.* at 28-29.

How the courts dealt with the Morris Rules changed in 1992. In dismissing an inmate's motion to adjudge the RIDOC in contempt for violating provisions of the Morris Rules, the District Court ruled that "state prisoner actions alleging violations of the Morris Rules or seeking enforcement of those rules properly belong in state court because the rules were promulgated under state law and were meant to be dealt

---

[7] This finding was questioned after the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 484 (1995). *See Heon v. Vose*, No. 95-2137 (1st Cir. August 12, 1996). In *Sandin*, the Supreme Court abandoned the analysis previously used to determine the existence of state-created due process liberty interests, on which the findings in *Rodi* were based, and instead found that principles of due process would only be implicated if the restrictions placed on an inmate by prison officials imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

with by state machinery." *Cugini v. Ventetuolo*, 781 F. Supp. 107, 113 (D.R.I. 1992).[8]

The RIDOC appealed the case to the First Circuit, which affirmed but not because the Morris Rules were unenforceable in federal court. *Cugini v. Ventetuolo*, 966 F.2d 1440 (1st Cir. 1992) (per curiam). Instead, the First Circuit found, with respect to the plaintiff's claim of a constitutional deprivation, that the complaint did not satisfy the requisite showing that "'with convincing particularity'" there was "'some likelihood . . . that the defendants disregarded Morris procedures . . .'" *Id.* (citing *Palmigiano v. Mullen*, 491 F.2d 978, 980 (1st Cir. 1974)). The First Circuit also noted that, even if the plaintiff's complaint was treated as a motion for contempt, it would still fail because the "prison officials did not disregard the Morris Rules . . . ." *Id.*[9]

Meanwhile, in Rhode Island state court, because of the federal court's ruling in *Cugini*, inmates filed cases seeking to enforce the Morris Rules and to receive damages for their violation. Ultimately, the Rhode Island Supreme Court held that

---

[8] Noteworthy is that the District Court cited no authority for that proclamation.

[9] In the summer of 1996, in a series of three separate per curiam unpublished opinions, the First Circuit found no state created liberty interest in the Morris Rules and therefore no right to enforce them in a damages action under federal law. *See Lother v. Vose*, 89 F.3d 823 (1st Cir. 1996) (". . . since both the Morris rules and the Rhode Island Administrative Procedure Acts are state laws, the alleged violation of either, in and of itself, is not a sufficient predicate to sustain a damages action under federal law. Complaints of such violations therefore should be directed to state court."); *Weems v. Vose*, 89 F.3d 824 (1st Cir. 1996) ("First, since the Morris [R]ules are state law, an alleged violation of them, without more, is not a sufficient predicate to sustain a damages action under federal law. Complaints of such violations should be directed to state court."); *Heon v. Vose*, No. 95-2137 (1st Cir. August 12, 1996) (Plaintiff has no claim for a "state-created liberty interest enabling him to due process protection under the classification provision of state prison regulations (the Morris Rules)" because the U.S. Supreme Court adopted an "atypical and significant hardship" standard in *Sandin*).

"the Morris Rules which constitute a federal construct, enforced eventually by a permanent injunction in *Morris IV, are binding upon the [RI]DOC* and are *enforceable for violation of such rules by contempt proceedings in the Federal District Court."* *L'Heureux v. State Dep't of Corr.*, 708 A.2d 549, 552 (R.I. 1998) (emphasis added). The court went on to conclude that the state courts had no role in enforcing the Morris Rules. *Id.*

So by the late 1990's, prisoners with the RIDOC were told by the federal district court to seek redress for violations of the Morris Rules in state court (*Cugini*), and by the Rhode Island Supreme Court to go to federal court (*L'Heureux*).

Beginning in 1995, the RIDOC unilaterally changed the Morris Rules without notice to the parties or the Court. ECF No. 44 at 7-8. It eliminated the need for a three-member disciplinary board and the thirty-day limitation on punitive segregation. *Id.*[10] The RIDOC did not ask the Court to amend or alter the court order establishing the Morris Rules.[11] And the RIDOC did not file the new regulations under the state's Administrative Procedures Act ("APA"). *Id.* at 7.

## II.    ANALYSIS

*The Morris Rules as a Court Order*

Mr. Paiva contends that the Morris Rules, initially contained in a consent decree, subsequently became an order of this Court when it issued an injunction

---

[10] The current RIDOC rules on discipline that appear to have supplanted the Morris Rules can be found at ECF No. 25-4.

[11] To this date, despite "suggestions" from the Court on at least two occasions, the State has not filed a Motion to Amend or Alter the Court's injunction in the *Morris* case. *See, e.g.,* ECF No. 44 at 9-12.

incorporating them. ECF No. 25-1 at 2. He also asserts that this Court and the First Circuit have been clear that the RIDOC needs court approval before substantively changing the Morris Rules. *See id.* at 2, 5-7. He asserts that the RIDOC intentionally ignored and violated this Court's order when it unilaterally changed the Morris Rules and subjected him to discipline in violation of the Morris Rules as ordered by this Court. *Id.* at 3-4. Finally, he contends that RIDOC's claim that the Morris Rules are state law to be enforced in state court is disingenuous, when it knows that the Rhode Island Supreme Court ruled it had no jurisdiction over the Morris Rules and that claimants needed to seek relief in federal court because the Morris Rules were part of a federal court order. ECF No. 55 at 7-8.

The RIDOC contends that the Morris Rules are state regulations, not subject to federal review and that they need not seek court approval for changes in the Morris Rules that do not rise to the level of a constitutional violation. ECF No. 27 at 2. It asserts that in effect the Morris Rules are moot, considering subsequent United State Supreme Court precedence, specifically, the opinion in *Sandin v. Conner*, 515 U.S. 472 (1995). *Id.* at 3.

After extensive briefing from both parties (with Mr. Paiva representing himself)[12] and two hearings, the Court is now able to rule on Mr. Paiva's motion.

The underlying initial question posed by Mr. Paiva's motion and framed by the First Circuit's judgment and remand here, is whether the RIDOC could change the

---

[12] After this motion was fully briefed and argued, two attorneys entered their appearances on behalf of Mr. Paiva. ECF Nos. 59, 61.

procedures mandated by the court's injunction incorporating the Morris Rules, without seeking permission from the Court. *See* ECF No. 22. The United State Supreme Court offers guidance when it states that there is ". . . impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293–94 (1947) (citing *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922)). In *Howat*, the Supreme Court said:

> An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

258 U.S. at 189-90.

As the First Circuit guides, "[i]f the court has jurisdiction over the person and the subject matter, the interests of orderly government demand that the court's orders be respected and obeyed." *Fernos-Lopez v. U.S. Dist. Court for Dist. of Puerto Rico*, 599 F.2d 1087, 1091 (1st Cir. 1979). It is axiomatic that to follow the rule of law, the RIDOC cannot ignore or disobey an injunction of this Court.

Despite erroneous district court rulings starting with *Cugini*, the statement by the First Circuit forty-five years ago in *Morris III* remains true today. Without a

11

court "adjudication of their continuing obligations," the RIDOC cannot unilaterally, without court notice or permission, substantively changed the Morris Rules. *Morris III* at 1361. In doing so, the RIDOC has failed "to accord proper deference to the judicial decree." *Id.*

In support of its objection to Mr. Paiva's motions, the RIDOC makes several claims. It first makes a series of arguments refuting the substance of the injunction, claiming that "it is inappropriate to restrict prison officials to make a wide range of decisions that do not reach a constitutional dimension" and that "running of state detention facilities and the imposition of discipline are state functions only subject to federal authority when paramount federal or constitutional or statutory rights supervene." ECF No. 27 at 2. The RIDOC also asserts that because there is no state created liberty interest under the Morris Rules, the Supreme Court's precedent from *Sandin* requires that a prisoner show that prison officials imposed an atypical and significant hardship in relation to the ordinary incidents of prison life, in order to show a protected liberty interest. *Id.* at 3. Consequently, the RIDOC argues whether the 1974 Morris injunction remains in effect is essentially moot. *Id.*

The RIDOC's substantive arguments may well have merit, but they cannot be asserted by violating an existing court order. If the law has changed, if circumstances have changed, if new arguments need to be made, the rule of law does not allow the government—or any party—unilaterally to disregard a Court order. The proper remedy is to seek a modification or vacation of the order. After the orderly filing of motions, objections, and arguments the Court can determine whether to modify its

12

order, not one of the parties changing the order *sua sponte.*

The RIDOC next argues that not all changes in the Morris Rules should require the Court's involvement. *See* ECF No. 27 at 2-3 (citing *Morris II* at 185 and *Morris III* at 1362). The flaw with the RIDOC argument is that these were not minor changes of insignificant effect. The changes at issue go to the heart of the consent decree, which was fiercely negotiated. As discussed further below, the RIDOC should have first requested judicial guidance to determine whether such changes were permissible.

Lastly, the RIDOC argues that the Morris Rules are state rules–state law–and therefore, the Plaintiff's claims are barred by the Eleventh Amendment. ECF No. 35 at 3-4. While the Morris Rules were to be adopted by the state through its APA process, the Morris Rules became an order of this Court–an injunction–when the RIDOC suspended them without Court notice. *Morris II* at 182. With that order in place, jurisdiction is vested squarely in this Court, where Mr. Paiva now seeks to hold the RIDOC in contempt.

*Civil Contempt*

The Court may impose civil contempt "to compel compliance with a court order or to compensate a party harmed by non-compliance." *United States v. Saccoccia,* 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187 (1949)). But "[r]ecognizing the contempt power's virility and damage potential, courts have created a number prudential principles designed to oversee its deployment" and require a movant to show, with clear and convincing evidence, that

13

(1) the alleged contemnor had notice of the order, (2) "the order was clear and unambiguous," (3) the alleged contemnor "had the ability to comply with the order," and (4) the alleged contemnor violated the order. *Id.* (citing *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)).

In considering each prong, the Court first notes that the RIDOC had notice of the order as it was the party who agreed to the Morris Rules "willingly, if unenthusiastically" to facilitate "an end to adversarial litigation." *Rodi*, 941 F.2d at 27. The RIDOC was also involved in each ensuing court proceeding that involved the Morris Rules, including when the Court made the injunction permanent in 1974. Aside from the violations in the previously discussed cases, the RIDOC lived with the Morris Rules for twenty years—from the time the injunction was made permanent until the substantive changes were made in 1995—showing it had the ability to comply. And as discussed above, in unilaterally, without court notice or permission, changing the substance of the Morris Rules, the RIDOC violated the existing court order.

The final prong, which gives the Court pause, questions whether "the order was clear and unambiguous." *See Saccoccia*, 433 F.3d at 27. As for this prong, the First Circuit has stated that "[t]he test is whether the putative contemnor is 'able to ascertain from the four corners of the order precisely what acts are forbidden.'" *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir.2002) (quoting *Gilday v. Dubois*, 124 F.3d 277, 282 (1st Cir.1997)). Because of the damaging consequences of a contempt finding, "courts must 'read court decrees to mean rather precisely what

14

they say,'" to "narrowly cabin[] the circumstances in which contempt may be found."

*Saccoccia,* 433 F.3d at 27 (citing *Project B.A.S.I.C.,* 947 F.2d at 17). In noting that

"[t]he judicial contempt power is a potent weapon," the Supreme Court has warned

that "[w]hen it is founded upon a decree too vague to be understood, it can be deadly

. . . ." *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n,* 389 U.S. 64, 76 (1967).

So any ambiguities or omissions in a court order must be read to the benefit of the

person charged with contempt. *NBA Properties, Inc. v. Gold,* 895 F.2d 30, 32 (1st

Cir.1990).

The RIDOC asserts that the order enjoining it from suspending the Morris

Rules was not "clear and unambiguous." ECF No. 53 at 12-14. Because of the

inconsistencies in the caselaw, the Court finds this argument compelling, particularly

with respect to when the RIDOC could change the Morris Rules without permission

from the Court.

When the permanent injunction was affirmed by the First Circuit in 1975, the

First Circuit emphasized the inappropriateness of restricting the ability of prison

officials to make a wide range of decisions not of constitutional dimension and

expressed agreement with the district court's intention to promulgate "a procedural

guideline by which prison officials may change the Morris Rules without first seeking

the sanction of the district court" because "not all changes in the Morris Rules should

require [the Court's] approval." *Morris III* at 1362. Such procedural guideline never

appears to have been memorialized. ECF No. 53 at 11.

Ambiguity later arose after the Supreme Court's 1995 decision in *Sandin*, when the First Circuit recognized that the Morris Rules no longer entitled prisoners to a "state-created liberty interest." *See Heon v. Vose*, No. 95-2137 (1st Cir. August 12, 1996) (denial of petition for rehearing and rehearing *en banc*) (citing *Sandin*, 515 U.S. at 472). As such, changes to the Morris Rules would no longer impact a constitutional right unless such changes imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* If the intended procedural guideline had been memorialized to allow prison officials unilaterally to make changes to the Morris Rules not of a constitutional dimension, then it would follow that the RIDOC could make such changes so long as they did not violate the limitation set forth in *Sandin*.

Armed with the *Sandin* ruling, the language from the First Circuit in *Morris III*, and the District Court's mistaken suggestion in *Cugini* that the Morris Rules were not contained in, or part of, a court decree, the RIDOC believed it was free unilaterally to make "revisions to its internal classification and disciplinary policies in executing its state function of operating a prison" so long as such revisions did not result in a constitutional harm. ECF No. 27 at 2-3. The problem with that belief, however, was that the RIDOC was the one determining which revisions could result in a constitutional harm, without first seeking guidance from the Court. With the permanent injunction in place, the RIDOC did not have that freedom, and, as the First Circuit noted in *Morris III*, "access to the district court has been, and remains,

available to a party seeking to establish what in the Morris Rules is now constitutionally necessary and what is not." *Morris III* at 1362.

While the Court finds that the RIDOC should have first requested judicial guidance before making substantive changes to the Morris Rules to determine whether such changes were of constitutional dimension, it recognizes the ambiguity because of the caselaw over time. Thus, despite finding that the RIDOC violated the consent decree and judicial order, the Court declines to make a finding of contempt because the order was not "clear and unambiguous" as to when the RIDOC could change the Morris Rules without permission from the Court.[13]

## III.   CONCLUSION

After reviewing the extensive history of the Morris Rules, and responding to the First Circuit's directive, the Court makes the following findings and declarations.

1.  The First Circuit directed this Court to determine if the injunction against suspension of the Morris Rules is still in effect. ECF No. 22. The Court finds that the final decree, judgment, and injunction entered by this Court on March 8, 1974 in *Morris II* remains unaltered and in full force and effect and that the injunction has "not expired or been terminated."

2.  The RIDOC violated the injunction and order of this Court when it unilaterally and without Court permission disregarded the Court's injunction by

---

[13] In making this finding, the Court also notes that the information that Mr. Paiva hopes to obtain in his request for limited post-judgment discovery would not aid in the judgment of the motions currently before the Court. ECF No. 66. That request is thus denied as moot.

17

substantively changing the Morris Rules.

3. It is undisputed that the RIDOC violated the Morris Rules when Mr. Paiva was given more than thirty days in disciplinary segregation and when a single officer heard his appeal of the discipline instead of a three-member panel.

4. The Court orders the RIDOC to reinstate the Morris Rules as its disciplinary policy in their entirety and without modification within thirty days of this Order.

5. Despite finding that the RIDOC violated the consent decree and judicial order, the Court declines to make a finding of contempt because the order was not "clear and unambiguous" as to when the RIDOC could change the Morris Rules without permission from the Court. Mr. Paiva's Amended Motion for Further Relief; Motion for Contempt, as supplemented, is thus DENIED. ECF Nos. 4, 25, and 26.

6. The Court DENIES Mr. Paiva's request for any further relief at this time, including the vacation and expungement from his institutional record of the disciplinary convictions decided in violation of the Morris Rules. Mr. Paiva is free to file a motion seeking any further relief he deems warranted, which the Court will consider in a manner consistent with this Order.

7. Finally, the Court DENIES as moot Mr. Paiva's motion for leave to conduct limited post-judgment discovery. ECF No. 66.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge

January 28, 2020