*United States District Court*
D.R.I.

**RECEIVED**

NOV 3 0 2021

**U.S. DISTRICT COURT**
**DISTRICT OF R.I.**

• RICHARD PAIVA,
Plaintiff

RULE 70 Fed. R. Civ. Pro.

CASE NO: 17-mc-14-JJM-LDA

-V-

• RHODE ISLAND DEPARTMENT OF CORRECTIONS,
Defendant

NON-PARTY MOTION—PURSUANT TO RULE 71 Fed.R.Civ.
Pro.—SEEKING ENFORCEMENT OF JUDGEMENT
PURSUANT TO RULE 70 Fed.R.Civ.Pro.

    Now comes the Non-Party BRYAN SEVEGNY hereby seeking enforcement of this COURT's ORDER in the above cited case number pursuant to Rule 70 of the Federal Rules of Civil Procedure. This COURT has jurisdiction to hear this Non-Party's MOTION pursuant to Rule 71 of the Federal Rules of Civil Procedure.
    Chief Judge John J. McConnell of this Court issued an ORDER in the above cited case on January 28, 2020  III. CONCLUSION (Paiva v. R.I. Dept. of Corr., 498 F.Supp. 3d 277*, 2020 U.S. Dist LEXIS 13777**, 2020 WL 430062 (D.R.I. January 28, 2020)"4. The Court orders the RIDOC to reinstate the Morris Rules as its disciplinary

policy in their entirety and without modifications within [30] thirty days of this Order." Yet as of the date which this MOTION is CERTIFIED the RIDOC (DEFENDANT) has yet to OBEY & COMPLY with this ORDER as cited herein which the Chief Judge of this Court has issued.

Wherefore, the Non-Party PETITIONER BRYAN SEVEGNY hereby petitions this Court pursuant to the Rule 70 of the Federal Rules of Civil Procedure — invoking Non-Party Jurisdiction pursuant to Rule 71 of the Federal Rules of Civil Procedure — Ordering the DEFENDANT R.I.D.O.C. to comply with the Court ORDER issued close to about 2 years ago, and if need be the Petitioner respectfully Requests that this Court ORDER MEDIATION pursuant to section (a) of Rule 70 of the Federal Rules of Civil Procedure.

Furthermore, the PETITIONER BRYAN SEVEGNY ALSO petitions this COURT pursuant to section (e) of the Rule 70 of the Federal Rules of Civil Procedure thereby respecting the DEFENDANT RIDOC`s Right to DUE PROCESS & he Respectfully Requests that this COURT please hold an evidentiary Hearing — obviously in

accomodation of the China VIRUS, respecting
social distancing guidelines thereby effectuating
a ZOOM OR TELEPHONE conference if need be—
so that not only may further evidence be
presented from RECORDS on file with the
RIDOC -BUT- the Petitioner shall then be able
to provide the Court — ON RECORD — with the
neccessary evidence and testimony to allow the
Court to envision the effects such rebellion by
the DEFENDANT is imposing upon the Petitioner's
psychological & social well being in regards to
the absence of rehabilitation and/or corrections
due to the apparent Confederate Ideals of the
DEFENDANT in refusing to adhere to Federal
Supremacy. (Are they not then also missappropriating State & FEDERAL funds?)
                                                        DOJ

Therefore, the PETITIONER BRYAN SEVEGNY respectfully
requests that this Court appropriately GRANT this MOTION
and frame it's Observance and Ruling hereof in
the Light which is most favorable to the Dispensation
of Justice in the eye of the Law within this
Federalist Nation which opposes the apparent Confederate
Ideals of the DEFENDANT RIDOC.
              — CERTIFICATION —

I, the Non-Party Petitioner, hereby certify that I have sent a true copy of this MOTION to the
U.S. Dist Ct. for ECF Filing, as well as to ADAM ROACH, 150 South Main St.,
Providence, RI 02903 via U.S.P.S. First Class Mail on 11/26/21. Bryan Sevegny
                                                                    BRYAN SEVEGNY
                                                                       (PRO-SE)

APPEAL

TO: DEPUTY WARDEN KATHY LYONS (ISC)
FROM: BRYAN SEVEGNY # 135880 (HSC) E 7-Bsg ✓ 10/14/21

I AM HEREWITH CONSOLIDATING BOTH APPEALS FOR THE
D-BOARD HELD TODAY, 10/14/21.

ISSUES CONCERNING BOTH D-BOARDS:

First & Foremost, Lt. Violante came to ~~second~~ HSC a little over a week
later to read me my Disciplines only to ignorantly & arrogantly advise
me I had court on Wednesday — obviously to be charged, as though
I give a hoot — even though he could've read me my Disciplines
behind the Hospital in @ ISC when he was @ my door there. Nevertheless,
there is no explanation then why Lt. Violante did not read me my 2
Disciplines within the 24 hour deadline mandated by R.I.D.O.C. POLICY.
Second of all, both Disciplines have resulted in sanctions of 365 days,
a sentence which is not legally permitted under the R.I.D.O.C.
POLICY on file with the Rhode Island Secretary of State pursuant to R.I.G.L.§
42-56-1, et. seq. (Administrative Procedures Act) — the "Morris Rules" are still
on file in said office pursuant to cited R.I.G.L above, and are therefore
legally in effect, manifesting that my sentence of 365 days on both disciplines
is not only a misappropriation of State funds distributed by our State's Senate
to the R.I.D.O.C., but also such funds as are collected by the R.I.D.O.C. from
the Federal Government, thereby further warranting the ongoing investigation by the
U.S. Department of Justice into the MANY Civil Rights Violations, BUT, also the
R.I.D.O.C.'s continuation of Fraudulently Obtaining both State & Federal Tax
Money under false pretenses.
Third, my board has been held many WEEKS after being read the Disciplines in violation of RIDOC
POLICY demanding I be brought forth on record to declare Post Ponement of the Board (A) ·
Fourth, In court — as the RIDOC is more than aware — it has already ~~be~~ been deemed
illegal for ME to be held in Long-Term Solitary Confinement, so why hasn't Mental Health
bottled me from such confinement as they are not only morally obligated to, but also
legally obligated to pursuant to R.I.D.O.C. POLICY? Apparently Mental Health isn't working!

ISSUE CONCERNING JUST THE "SPITTING" D-BOARD:
If I made a threat, then that threat should've resulted in another seperate discipline.
I said that I would slice him — yes — but I did NOT say "ear to ear"; Apparently
whatever FALSE information your DEPT. has recieved has resulted in a bias upon me
by such FALSE rumors as to associate me incorrectly with MATTHEW MARCOTTE
& his case somehow, but there is no need for me to provide YOU with any
information as as to distinguish the difference between his organization
& mine, even more so when his case is ~~not~~ not the result of an organizational
aspect. But this is why I love rumors though — cause now us who know the truth
~~to~~ know the difference. THANK YOU FOR EMPLOYING MEXPARTAN YOUR OFFICERS CONSPIRE.

TO: ASSISTANT DIRECTOR, 4 HOWARD AVE,
FROM: BRYAN SEVEGNY #185888 (HSC)          By Jozz  11/3/21
I AM HEREWITH CONSOLIDATING BOTH APPEALS FOR THE D-BOARD ON 10/14/21

ISSUES CONCERNING BOTH D-BOARDS:

First & foremost, L.T. Violante came to HSC a little a week later to read me my disciplines only to ignorantly & arrogantly advise me I had court on Wednesday — obviously to be charged, as though I give a hoot — even though he could've read me my disciplines behind the Hospital in ISC when he was @ my door there. Nevertheless, there is no explanation then why L.T. Violante did not read my 2 Disciplines within the 24 hour deadline mandated by R.I.D.O.C. POLICY!

Secondly, all, Both Disciplines have resulted in sanctions of 365 days, a sentence which is not legally permitted under the R.I.D.O.C. POLICY on file with the Rhode Island Secretary of State pursuant to R.I.G.L.§ 42-56-1, et seq. (Administrative Procedures Act) — The "Morris Rules" are still legally in effect, manifesting that any sentence 365 Days on both disciplines is not only a misappropriation of State Funds distributed by our State's Senate to the R.I.D.O.C. from the Federal Government, thereby further warranting the ongoing investigation by the U.S. Department of Justice into the MANY Civil Rights Violations, BUT, also the R.I.D.O.C.'s continuation of Fraudulently Obtaining both State & Federal Tax Money under false pretenses.

Third, my board has been held been held many WEEKS after being read the Disciplines in violation of R.I.D.O.C. POLICY, demanding I be brought forth on record to declare Post Ponement of the Board(s).

Fourth, In court - as the R.I.D.O.C. is more than aware - it has already been deemed illegal for ME to be held in Long-Term Solitary Confinement, so why hasn't Mental Health deterred me from such confinement as they are not only morally obligated to, but also legally obligated to pursuant to R.I.D.O.C. POLICY? APPARENTLY MENTAL HEALTH BUT WORKING!

ISSUES CONCERNING JUST THE "SPITTING" D-BOARD:

If I made a threat, then that threat should've resulted in another seperate discipline. I said I would slice him — yes — but I did NOT say "ear to ear". Apparently whatever FALSE information your Dept. has received has resulted in a bind upon me by such FALSE rumors as to associate me incorrectly with MATTHEW MARCOTTE & his case somehow, but there is no need for me to provide YOU with any information so as to distinguish my organization & mine, even more so when his case is NOT the result of any organizational aspect. But this is why I love rumors though — cause now us who know the truth know the difference.

THANK YOU FOR EMPOWERING ME & PROVING YOUR OFFICERS CONSPIRE.

```
DISP010.RPT        R.I. DEPARTMENT OF CORRECTIONS           DATE: 10/26/2021
                                                            PAGE  01
```

### * Warden's Review Letter *

```
        TO:    INMATE BRYAN M SEVEGNY                0135880
SECURITY       HS  E E07

      FROM:    Kathleen   Lyons              Deputy Warden Corrections
INFR SEC       ISC
```

SUBJECT:   DECISION OF THE WARDEN'S REVIEW          DENIED

BOOKING 0400822      8/26/2021        P04  VIOLENCE

Assault on Staff  by throwing substances (to include spitting and/or throwing bodily fluid
s) that did not involve serious injury

A REVIEW OF THE MATERIALS PERTAINING TO YOUR DISCIPLINE HEARING HAS RESULTED IN
THE FOLLOWING DETERMINATION ON YOUR REQUEST FOR A WARDEN'S REVIEW

```
HEARING DATE/TIME                 WARDEN SIGN DATE/TIME

10/14/2021 09:25:43                 10/26/2021 10:10:59
GUILTY                              DENIED
```

HEARING P04  Assault on Staff  by throwing substances (to include spitting and/or throwing bodily fluid

```
HEARING SANCTIONS
     DISCIPLINARY CONFINEMENT  FOR 365 DAYS
     LOSS OF GOOD TIME         FOR 365 DAYS
```

RATIONALE BASED ON INFO/STMTS LETTER RECEIVED
          I have reviewed your disciplinary proceedings and submitted documentation
          presented at your hearing. I have also reviewed your written appeal,
          Disciplinary Confinement Post Hearing Notice and your past discipline. Based on
          this review I found no procedural errors or new evidence that would alter the
          outcome of the hearing. I agree with the hearing Lieutenants decision.
          Consideration for Sanction Reduction options will not be considered until you
          have been discipline free for 45 days. Your mental health status is being
          evaluated and considerations for reductions based on these assessments may
          result in reductions once completed.

```
DISP010.RPT          R.I. DEPARTMENT OF CORRECTIONS          DATE: 10/26/2021
                                                             PAGE  01
```

### * Warden's Review Letter *

```
       TO:  INMATE BRYAN M SEVEGNY                  0135880
SECURITY    HS  E E07

     FROM:  Kathleen  Lyons              Deputy Warden Corrections
INFR SEC    ISC
```

SUBJECT:  DECISION OF THE WARDEN'S REVIEW          DENIED

BOOKING 0400823     8/26/2021      P37   VIOLENCE

Assault on Staff with serious injury resulting (to include assaults by throwing liquid, bl
ood, waste, chemicals and/or urine)

A REVIEW OF THE MATERIALS PERTAINING TO YOUR DISCIPLINE HEARING HAS RESULTED IN
THE FOLLOWING DETERMINATION ON YOUR REQUEST FOR A WARDEN'S REVIEW

```
HEARING DATE/TIME                        WARDEN SIGN DATE/TIME

10/14/2021 09:21:33                        10/26/2021 10:13:49
GUILTY                                     DENIED
```

HEARING P37  Assault on Staff with serious injury resulting (to include assaults by throwing liquid, bl

```
HEARING SANCTIONS
     DISCIPLINARY CONFINEMENT   FOR 365 DAYS
     LOSS OF GOOD TIME          FOR 365 DAYS
```

RATIONALE BASED ON INFO/STMTS LETTER RECEIVED
     I have reviewed your disciplinary proceedings and submitted documentation
     presented at your hearing.  I have also reviewed your Disciplinary Confinement
     Post Hearing Notice, your written appeal and CCTV footage of your infraction.
     The reported narrative of your actions is consistent with the CCTV footage. I
     have also reviewed your disciplinary history and past patterns of behavior. No
     witnesses to this incident have come forward to speak on your behalf. Based on
     this review I found no procedural errors or new evidence that would alter the
     outcome of the hearing. I agree with the hearing Lieutenants decision.

```
DISP010.RPT          R.I. DEPARTMENT OF CORRECTIONS          DATE: 11/08/2021
                                                             PAGE  01
```

## * Warden's Review Letter *

```
      TO:  INMATE BRYAN M SEVEGNY              0135880
SECURITY   HS  E E07

    FROM:  Rui  Diniz                 Assistant Director Institutions/Operations
INFR SEC   ISC
```

SUBJECT:  DECISION OF THE WARDEN'S REVIEW

BOOKING 0400823      8/26/2021          P37  VIOLENCE

Assault on Staff with serious injury resulting (to include assaults by throwing liquid, bl
ood, waste, chemicals and/or urine)

A REVIEW OF THE MATERIALS PERTAINING TO YOUR DISCIPLINE HEARING HAS RESULTED IN
THE FOLLOWING DETERMINATION ON YOUR REQUEST FOR A WARDEN'S REVIEW

HEARING DATE/TIME                    WARDEN SIGN DATE/TIME

10/14/2021 09:21:33                    11/08/2021 11:11:16
GUILTY                                 DENIED

HEARING P37  Assault on Staff with serious injury resulting (to include assaults by throwing liquid, bl

HEARING SANCTIONS
      DISCIPLINARY CONFINEMENT   FOR 365 DAYS
      LOSS OF GOOD TIME          FOR 365 DAYS

RATIONALE BASED ON INFO/STMTS LETTER RECEIVED
          After a review of the incident and your own admission, I found no justificatiio
          n to alter the decision or sanction. You may write to the Warden after serving
          90 days for to request a reduction in your disciplinary time.

```
DISP010.RPT         R.I. DEPARTMENT OF CORRECTIONS          DATE: 11/08/2021
                                                            PAGE   01
```

## * Warden's Review Letter *

```
        TO:   INMATE BRYAN M SEVEGNY              0135880
SECURITY      HS  E E07

      FROM:   Rui  Diniz                   Assistant Director Institutions/Operations
INFR SEC      ISC
```

SUBJECT:   DECISION OF THE WARDEN'S REVIEW

BOOKING 0400822     8/26/2021        P04  VIOLENCE

Assault on Staff  by throwing substances (to include spitting and/or throwing bodily fluid
s) that did not involve serious injury

A REVIEW OF THE MATERIALS PERTAINING TO YOUR DISCIPLINE HEARING HAS RESULTED IN
THE FOLLOWING DETERMINATION ON YOUR REQUEST FOR A WARDEN'S REVIEW

```
HEARING DATE/TIME                   WARDEN SIGN DATE/TIME

10/14/2021 09:25:43                    11/08/2021 11:49:03
GUILTY                                 DENIED
```

HEARING P04  Assault on Staff  by throwing substances (to include spitting and/or throwing bodily fluid

```
HEARING SANCTIONS
    DISCIPLINARY CONFINEMENT  FOR 365 DAYS
    LOSS OF GOOD TIME         FOR 365 DAYS
```

RATIONALE BASED ON INFO/STMTS LETTER RECEIVED
         After a review of the incident and your own admission, I found no justificatiio
         n to alter the decision or sanction. You may write to the Warden after serving
         90 days for to request a reduction in your disciplinary time.

**Rhode Island Department of Corrections**
**POLICY UNIT**

**TO:**      RIDOC Employees

**FROM:**    Patricia A. Coyne-Fague, Acting Director

**VIA:**     Jayne Del Sesto, Chief/Program Development, Policy Unit

**DATE:**    February 26, 2018

**SUBJECT: 11.01-7 DOC, Code of Inmate Discipline, 02/26/18**

The enclosed policy, 11.01-7 DOC, Code of Inmate Discipline, effective 02/26/18, supersedes the current policy 11.01-6 DOC. <u>Staff is strongly encouraged to read the</u> <u>updated policy in its entirety</u>; however, for your convenience the updated policy contains the following change(s) (<u>underscore</u> = new text; ~~strikethrough~~ = deleted text):

~~"C" Status~~ has been changed to <u>Administrative Confinement</u> throughout this policy.

III.A.2.c.(6)   Television ~~and/or~~ radio <u>and/or other electronic devices</u>

III.A.7.b.(6)   Television ~~and/or~~ radio <u>and/or other electronic devices</u>

III.B.1.b.   In any action under this Code, there are six (6) mandatory steps for all formal disciplines:

    <u>(6)   Notification of inmate's ability to appeal.</u>

III.B.1.c.   <u>List of Possible Sanctions</u>

    (1)   <u>Officer Level Sanction (No Hearing Required)</u>

        <u>(a)   Verbal Warning</u>
        <u>(b)   2-Nighter</u>
        <u>(c)   Extra Work Detail in lieu of discipline</u>

    (2)   <u>Hearing Officer Level Sanctions</u>

        <u>(a)   Verbal Warning</u>
        <u>(b)   2-Nighter</u>
        <u>(c)   Loss of Visits / Visiting Period</u>
        <u>(d)   Loss of Telephone</u>
        <u>(e)   Loss of Job</u>
        <u>(f)   Loss of Commissary –except essential items</u>
        <u>(g)   Loss of Kiosk</u>

# Rhode Island Department of Corrections

## Interim Memorandum

**TO:**       RIDOC Employees

**FROM:**   Patricia A. Coyne-Fague, Acting Director

**DATE:**   February 27, 2018

**SUBJECT:**   11.01-7 DOC, Code of Inmate Discipline, 02/26/18

Effective immediately, the above-referenced policy is amended as follows:
(<u>Underscore</u> = new language)

III.   <u>PROCEDURES</u>:

    C.4.<u>d</u>.   <u>When an inmate is subject to a discipline that could result in a sanction of ninety (90) days or more, the inmate cannot waive the appearance of an Adult Counselor at his/her hearing.</u>

# RHODE ISLAND DEPARTMENT OF CORRECTIONS POLICY AND PROCEDURE

| | POLICY NUMBER:<br>11.01-7 DOC | EFFECTIVE DATE:<br>02/26/18 | PAGE 1 OF 32 |
|---|---|---|---|
| | SUPERCEDES:<br>11.01-6 DOC | DIRECTOR: *[signature]*   Please use BLUE ink. | |

| SECTION:<br>RULES AND DISCIPLINE | SUBJECT:<br>CODE OF INMATE DISCIPLINE |
|---|---|

**AUTHORITY:** Rhode Island General Laws (RIGL) § 42-56-10(22), Powers of the director; § 42-56-1, Declaration of powers; § 42-56-24, Earned time for good behavior or program participation or completion

**REFERENCES:** Wolff v. McDonnell, 418 U.S. 539 (1974); ACA standards 4-4226 through 4-4229 (rules of conduct), 4-4230 (resolution of minor infractions), 4-4231 (criminal violations), 4-4232 and 4-4245 (disc. rpts.), 4-4234 through 4-4237 (pre-hearing action), 4-4238 through 4-4243 (disc. hrg.), 4-4244 through 4-4248 (Hrg. Decisions, Record, Review, and Appeal), 4-4252 (disc. detention), 4-4255 (disc. detention review) 3-ALDF-3C-01 through 3-ALDF-3C-22 (rules and discipline, adult local detention facilities); the most recent version of RIDOC policies 5.01 DOC, Management of Semi-Active and Archival Records; 9.36 DOC, Substance Abuse Testing, Sanctions, and Treatment for Inmates Under RIDOC Supervision; 13.10 DOC, Inmate Grievance Procedure; 15.01 DOC Classification Process; 18.43 DOC, Health Evaluation of Inmates in Administrative or Disciplinary Confinement; 20.01 DOC, Inmate Furloughs; Sandin v. Conner, 515 U.S. 472 (1995); Superintendent v. Hill, 472 U.S. 445 (1985); Lewis v. Casey, 516 U.S. 804 (1996)

| INMATE/PUBLIC ACCESS? | X YES |
|---|---|
| AVAILABLE IN SPANISH? | X YES |

I.     **PURPOSE:**

To establish procedural guidelines for the operation of a code of inmate discipline that maintains order and furthers the rehabilitation of inmates.

Policy #11.01-7; Code of Inmate Discipline
Effective 02/26/18
Page 6 of 6

III.C.13.d.    Mental Health Evaluation of Inmates in Long-Term Disciplinary
Confinement

Behavioral Health Care staff assessments are made as clinically appropriate;
however, evaluations are conducted by behavioral health professionals at no
less than the following minimum intervals (at a minimum):

(3)    NOTE: Staff shall notify Behavioral Health Services staff and request
evaluation if the inmate shows signs of mental illness and/or
deterioration in behavior.

III.E.2.    Restitution

Whenever restitution is ordered, the inmate must receive a ~~written notice~~
copy of the Restitution Order from the Hearing Officer who found the
inmate guilty of willful disfigurement, damage, and/or destruction of state
property and ordered restitution ~~(Attachment 3)~~.

Unless otherwise specified, unit/program/facility managers are responsible for
ensuring subordinate staff is adequately trained in the contents of this policy.

This policy IS approved for inmate/public access.

JMD

II.    <u>POLICY:</u>

    A.    The Rhode Island Department of Corrections (RIDOC) has established a code of inmate discipline that is fair, impartial, and constitutional.  This Code:

        1.    places inmates on notice of prohibited conduct involving institutional safety, security, and order in the facilities;

        2.    establishes guidelines and procedures to address inmates who fail to comply with rules of conduct; and

        3.    defines the process of determining allegations of misconduct and sanctions for violations of the Code.

    B.    All disciplinary actions are timely, impartial, and consistent.   Sanctions are proportionate to the seriousness of offenses.

    C.    <u>Notification</u>

        1.    <u>Employees</u> – Supervisors will ensure each employee who has direct contact with and/or decision-making authority over members of the offender population [hereinafter referred to as inmate(s)] has access to this policy.

        2.    <u>Inmates</u>

            a.    The policy will be available in each facility's inmate law library and in inmate living areas.

            b.    Inmate orientation sessions will include information about this policy's major provisions.

            c.    Each facility's inmate handbook will:

                (1)    direct inmates to familiarize themselves with this policy; and

                (2)    specify the location(s) where this policy may be found.

III.   **PROCEDURES:**

A.   Definitions

    1.   Formal discipline – those disciplinary infractions that warrant a sanction of loss of good time in addition to either loss of privileges or punitive segregation.

    2.   2-Nighter – an administrative loss of institutional privileges for a period of forty-eight (48) continuous hours.

        a.   The continuous hours begin at the time the inmate signs the waiver of his/her right to appear before a Hearing Officer and thereby accepts the 2-nighter.

        b.   There will be no loss of good time in connection with an inmate's acceptance of a 2-nighter.

        c.   At the discretion of the Warden/designee the inmate may be granted the following privileges:

            (1)   Visits (attorney and RIDOC clergy of record are allowed);

            (2)   Telephone (attorney calls are allowed)

            (3)   Furloughs

            (4)   Recreation

            (5)   Core on-grounds or off-grounds classes, school, and employment

            (6)   Televisions, radios and/or other electronic device

                  **NOTE:**  May require removal from communal living area to cell for duration of 2-nighter.

            (7)   Library – when inmate is a party to ongoing legal action covered by Lewis v. Casey, 516 U.S. 804 (1996);

    3.   Category 1 Contraband – items that are unauthorized for inmate possession and/or violate state/federal law or RIDOC policy or other items that may pose a direct threat to security.

4.   <u>Category 2 Contraband</u> – items that are authorized for inmate possession, but in limited quantities. Items not obtained through proper channels or more than the authorized amount but not necessarily a threat to institutional security.  Please refer to the most recent version of RIDOC Policy 14.03 DOC, <u>Inmate Property Accountability</u>.

5.   <u>Charging Employee</u> – includes, but is not limited to, any person having the care, custody, and/or control of an inmate.  (Example: A lieutenant receives a report from a volunteer that an inmate was verbally abusive during a program.  After investigation of the incident, the lieutenant may initiate a booking).

6.   <u>Disciplinary Confinement</u> – a form of temporary separation from the general population for those inmates who are found guilty of serious disciplinary infractions; place of confinement to be designated by the Warden/designee; duration is commensurate with the seriousness of the offense, consistent with RIDOC's Discipline Severity Scale; includes a loss of privileges and loss of good time.

7.   <u>Loss of Privileges (LOP)</u> – temporary loss of specified privileges and loss of good time, not to exceed fifteen (15) days, for those inmates who are found guilty of moderate or low moderate disciplinary violations, consistent with RIDOC's Discipline Severity Scale;

   a.   inmates remain in general population housing;

   b.   loss of privileges (LOP) is determined by the Hearing Officer and is subject to the discretion of the Warden/designee, consistent with the inmate's status and domicile area/facility and may include loss of:

      (1)   Visits (attorney and RIDOC clergy of record are allowed);

      (2)   Furloughs;

      (3)   Recreation;

      (4)   On-grounds classes, school, employment, and library (library exceptions:  inmate is a party to ongoing legal action covered by <u>Lewis v. Casey</u>);

         <u>NOTE</u>:   Warden/designee must approve continued participation in off-grounds classes, school, and/or employment.

(5)     Out-of-cell time, except for meals and/or to seek medical care;

(6)     Televisions, radios and/or other electronic devices;

(7)     Telephone, except to attorney (with prior approval and limited to one (1) call per week).

> **NOTE**:   This may include loss of telephone personal identification number (PIN) for a period of time to be determined by the Hearing Officer. Suggested sanctions:
>
> (a)     First offense: 5 days;
>
> (b)     Second offense: 10 days;
>
> (c)     Third/subsequent offense: 15 days.

B.     <u>Discipline Code</u>:

    1.     <u>General Provisions</u>

        a.     <u>Classes of Offenses</u>:  There are four (4) classes of offenses.

            (1)     Class 4 – Low Moderate

            (2)     Class 3 – Moderate

            (3)     Class 2 – High

            (4)     Class 1 – Highest

                (a)     Predatory

                (b)     Non-predatory

            **NOTE**:  See Attachment 1, RIDOC Discipline Severity Scale, for specific offenses, listed by Class.

        b.     In any action under this Code, there are six (6) mandatory steps for all formal disciplines:

            (1)     Initial Booking Report;

(2)    Superior Officer/designee review;

(3)    Notice to the inmate;

(4)    Hearing before a Hearing Officer;

(5)    Record;

(6)    Notification of inmate's ability to appeal.

c.    <u>List of Possible Sanctions</u>

(1)    Officer Level Sanction (No Hearing Required)

(a)    Verbal Warning
(b)    2-Nighter
(c)    Extra Work Detail in lieu of discipline

(2)    Hearing Officer Level Sanctions

(a)    Verbal Warning
(b)    2-Nighter
(c)    Loss of Visits / Visiting Period
(d)    Loss of Telephone
(e)    Loss of Job
(f)    Loss of Commissary –except essential items
(g)    Loss of Kiosk
(h)    Loss of Television
(i)    Loss of Radio
(j)    Loss of Weekend Movie
(k)    Loss of Media Player (MP4)
(l)    Loss of Recreation Period(s)
(m)    Removal from Programming
(n)    Restitution
(o)    Loss of Privileges
(p)    Disciplinary Confinement

d.    <u>Waiver of Disciplinary Report for Class 4 Offenses</u>

(1)    Class 4 (Low Moderate) offenses may be resolved by the
reporting employee as follows:

    (a)    An employee observing Class 4 violations handles such incidents tactfully and firmly and has two options available that do not involve discipline

        (i)    warning and counseling the inmate in a stern but professional manner; and/or

        (ii)    allowing the inmate to complete additional work detail in lieu of disciplinary action

    (b)    If the employee considers the imposition of discipline necessary for a Class 4 offense, s/he may, at his/her discretion, present the inmate with the option of:

        (i)    administrative loss of institutional privileges for a period of two (2) nights, referred to as a 2-nighter (defined in Section III.A); or

        (ii)    a written charge and subsequent appearance before a Hearing Officer.

(2)    The charge and disposition are presented to the inmate as soon as reasonably possible.

(3)    The inmate executes a signed waiver of his/her right to appear before the Hearing Officer.

NOTE: If such waiver is obtained, the administrative penalty commences immediately.

(4)    The inmate is given a copy of any waiver of the right to appear before a Hearing Officer s/he executes and the records of any punishment resulting therefrom.

(5)    If an inmate requests an appearance before a Hearing Officer on a Class 4 offense, the inmate shall not be confined to his/her cell pending said appearance.

(6)    If the inmate is subsequently found guilty, punishment beyond a 2-night loss of institutional privileges may be imposed – up to five (5) days loss of specified privileges within inmate's classification (commonly known as LOP defined in Section III.A).

(7)   Whenever a Hearing Officer imposes LOP, there is a corresponding loss of good time.

**NOTE:** A Loss of Privileges finding must be entered into the Inmate Facility Tracking System (INFACTS) as discipline.

(8)   The inmate may be presented the aforementioned choice of waiver of Disciplinary Report for Class 4 offenses only once (1x) every seven (7) days. The written notice of choice informs the inmate that any additional Class 4 violations during that period require a disciplinary hearing.

e.   <u>Limits</u>

Any imposition of discipline (disciplinary confinement and/or loss of privileges) is for a definite period of time.

(1)   <u>Class 4 – Low Moderate - discipline less than disciplinary confinement, up to 5 days loss of privileges (LOP)</u>

<u>Except</u> when an inmate is found guilty of an infraction(s) committed while s/he was serving disciplinary confinement time or confined in Administrative Confinement. In such instances, any remaining LOP time may be converted to disciplinary confinement time, and additional disciplinary confinement time may be imposed.

(2)   <u>Class 3 – Moderate - discipline less than disciplinary confinement, 3 to 15 days LOP</u>

(a)   When an inmate is found guilty of a Class 3 offense, arising from separate incidents (on the same or separate dates), for the <u>third</u> time in any 6-month period, the sanction for the third offense may be taken from those authorized for the next higher class of offense.

(b)   <u>Except</u> when an inmate is found guilty of an infraction(s) committed while s/he was serving disciplinary confinement time or confined in Administrative Confinement. In such instances, any remaining LOP time may be converted to disciplinary

confinement time, and additional disciplinary confinement time may be imposed.

(3)  Class 2 – High – 1 to 20 days disciplinary confinement

When an inmate is found guilty of a Class 2 offense, arising from separate incidents (on the same or separate dates), for the second time in any 6-month period, the sanction for the second offense may be taken from those authorized for the next higher class of offense.

(4)  Class 1 -- Highest

(a)  Predatory – 31 days to 1 year disciplinary confinement

Class 1, Highest, Predatory is a category of Class 1 offenses. Because of the severity of predatory offenses, the range of disciplinary confinement imposed by a Hearing Officer for this category of offense (Class 1, Highest, Predatory) is thirty-one (31) days to one (1) year.

(i)  In order for the Hearing Officer to impose more than thirty (>30) days disciplinary confinement, however, the offense for which the inmate is found guilty must have **caused serious injury, immense damage, or posed a severe threat to institutional or public safety**. When imposing disciplinary confinement for predatory infractions, the Hearing Officer imposes a sanction that is commensurate with the injury, damage, or threat to institutional or public safety for which the inmate was found guilty.

(ii)  A post-hearing review process, explained in detail elsewhere in this policy (Section III.D.12.), is in place for inmates who receive more than thirty (30) days disciplinary confinement for any single infraction.

**NOTE:** Inmates lose one day of previously earned good behavior time for each day of disciplinary confinement.

(b)  Non Predatory – 10 to 30 days disciplinary confinement

The Hearing Officer imposes 10 – 30 days disciplinary confinement when an inmate is found guilty of a Class 1, Highest, Non-Predatory offense.

C.  Formal Disciplinary Process (excluding 2-nighters based on waiver of discipline process)

1.  Booking Report by Charging Employee

a.  Disciplinary Report:  The formal disciplinary process begins with the initiation of a Disciplinary Report in INFACTS by a staff member upon detection of a violation of the Code of Inmate Discipline.

(1)  The charging employee submits a Disciplinary Report (written charge as entered in INFACTS) to the Superior Officer as soon as possible after the alleged violation occurs.

(2)  The Disciplinary Report must show, in writing, the inmate's name; RIDOC inmate I.D. number; housing/work assignments; time, date, place, and charge (known details concerning the alleged violation); and identifies the employee initiating the report (charging employee).  Said employee ensures that the "Inmate Security", "Area/Cell", and "Inmate Job Code" fields contain correct information.  If not, appropriate corrections are made.

(a)  In most instances/circumstances, the "charging infraction" is a single infraction.  If more than one infraction occurs during a single incident, the charging infraction is the most serious one.

Example #1:  Inmate Jones is loud and boisterous in the dining room.  When told to quiet down by the CO on duty, he throws his food tray onto the floor. When the CO approaches Inmate Jones, he assaults the Officer.

The "charging infraction" is the assault on a CO.

The "description of infraction" includes details of the inmate's behavior, other infractions (loud and

boisterous behavior and throwing food tray), whether the inmate was warned, etc.

Example #2:  During a cell search, numerous adult magazines, underwear beyond the allowed quantity, and another inmate's radio are found.

The "charging infraction" is possession of category 1 contraband (items that are unauthorized for inmate possession – the magazines and the radio).

(b)     Under extenuating and serious circumstances and at the discretion of supervisory personnel, multiple bookings may result from a single incident.

Example:  The same cell search yields both illegal drugs and a weapon.   The inmate is subject to separate Disciplinary Reports and possible criminal charges.

b.     A Correctional Officer may take immediate custody of an inmate being charged with a disciplinary infraction, if such action is deemed necessary by the Officer to avoid assault or serious disorder.

(1)     However, only the Warden, Deputy Warden, a Superior Officer, or a member of one of RIDOC's investigatory units [Office of Inspection (OI) or Special Investigations Unit (SIU)] may determine that an inmate should be placed on a restricted status [i.e., locked and fed-in (LFI) or other status as determined by facility design] if necessary to maintain the safety and security of the facility.

(a)     Such detention occurs only when it appears the inmate represents a threat to him/herself or to others, or to the security or order of the institution.

(b)     The Superior Officer who determines whether detention prior to an investigation and hearing is necessary, makes a written report and his/her decision is subject to review by the Warden/designee.

(c)     Such detention lasts only as long as the circumstances requiring it remain in effect, and **in no event** will an inmate be detained without a hearing (i.e., locked and

fed in pending an investigation) beyond the next disciplinary hearing date without Warden/designee's approval.

(2)   If an inmate is locked up pending an investigation and disciplinary hearing, such detention is <u>not</u> in the disciplinary confinement area unless required for the security or safety of the institution.

2.   <u>Review by Superior Officer/Designee</u>

a.   Unless the incident requires further investigation, a written copy of the charge is transmitted within 24 hours of the incident (excluding weekends and holidays) (e.g., posted to a "To Be Reviewed" folder or clipboard) by the Correctional Officer or charging employee to the reviewing Superior Officer/designee on duty at the time.

b.   At or near the beginning of his/her shift, the Shift Commander or designated reviewing Superior Officer reviews all INFACTS Disciplinary Reports marked "awaiting review". The purpose of this review is to ensure completeness and accuracy, and to verify:

(1)   the report is comprehensive and includes answers to the questions: who, what, when, where, and how;

(2)   identification is accurate, and includes proper spelling of inmate's name and ID number;

(3)   inmate's date of birth;

(4)   date and time of infraction;

(5)   inmate's job assignment, if applicable;

(6)   infraction for which inmate is charged;

(7)   infraction's numerical code;

(8)   inmate's quarters assignment;

(9)   place of infraction;

(10)  the charging offense is consistent with the description of the incident;

(11)  the charging employee's name

c.  When the infraction is substance abuse-related, the Superior Officer/designee determines whether it is a first, second, or third/subsequent offense.

Once a Superior Officer/designee validates a substance abuse-related booking, s/he notifies SIU in writing, on the next business day, via the pre-shift report.

In cases involving positive urine tests, a copy of the urinalysis report must be attached to the Disciplinary Report.

d.  The reviewing Superior Officer conducts a preliminary review of the matter without unnecessary delay.  The review may include interviews with the charging employee, inmate charged, and any other employee(s) or inmate(s) indicated. The reviewing Superior Officer conducts any further inquiry deemed necessary.

e.  The reviewing Superior Officer enters his/her recommendation to either dismiss or proceed with the Disciplinary Report in INFACTS and gives appropriate notice to the inmate being charged with the violation.

(1)  Behavioral Health Services staff checks INFACTS (Discipline Menu – Awaiting Hearing Report) on a daily basis for all disciplinary reports issued in their respective facilities. When an offender has committed an infraction which could result in placement in disciplinary confinement, and where Behavioral Health Services staff believes an inmate's mental health status may have contributed to his/her receiving a Disciplinary Report, that Behavioral Health Services staff person consults the Clinical Director/Psychologist, or in his/her absence, the Behavioral Health Services staff member designated to provide clinical coverage.  Based on discussion with the Clinical Director/Psychologist (or in his/her absence, the Behavioral Health Services staff member designated to provide clinical coverage), the Behavioral Health Services staff person shall then approach the facility Warden to discuss whether the misconduct was a

<u>NOTE</u>: The absence of an accused inmate [and the reason(s) for his/her absence] must be documented on the Disciplinary Report and verbalized on the recording of the hearing. In all such cases, review by the Warden/designee is automatic.

c.   <u>Continuance</u>:  At the request of the inmate, and/or for good cause shown, a disciplinary hearing may be continued to the next hearing date at the discretion of the Hearing Officer.  The Hearing Officer records the reason(s) for any continuance.  Not more than two (2) continuances may be granted.

d.   <u>Plea</u>:  The Hearing Officer reads the charge as it appears on the Disciplinary Report and fully explains it.

  (1)   The inmate admits or denies the charge.

  (2)   If the inmate wishes to plead "guilty" to the charge, the inmate shall so state.

        S/he may choose to plead "guilty with an explanation".

  (3)   If criminal charges are being considered, the Hearing Officer so advises the inmate.

  (4)   A plea of "not guilty" is entered by the Hearing Officer if the inmate refuses to plead or is not present.

e.   <u>Witnesses</u>

  (1)   At the discretion of the Hearing Officer, an accused inmate has an opportunity to present a reasonable amount of witness testimony at his/her disciplinary hearing.

  (2)   If an inmate does not request witnesses, the Hearing Officer ensures the record accurately reflects that fact.

  (3)   The Hearing Officer has authority to include/exclude any person as a witness, limit the testimony of any witness which is redundant or irrelevant, and order the presentation of any documents or evidence necessary for the conduct of a disciplinary hearing.

6.      Disciplinary Hearing Before a Hearing Officer

    a.      Hearing Officer

        (1)     The Warden/designee appoints a supervisory employee as a Hearing Officer who coordinates the disciplinary functions of the facility and ensures the facility complies with this Code, to include conducting two (2) hearing sessions per week, with at least two (2) days between each session.

                **NOTE:**  In the event of short staffing, disciplinary hearings have priority over other institutional operations.

        (2)     S/he is responsible for the processing and distribution of all records and reports required under this Code unless s/he expressly delegates this responsibility to another individual.

        (3)     Any employee who initiates a Disciplinary Report, investigates/reviews the charging employee's report, or is listed as a witness on the Disciplinary Report is not eligible to be the Hearing Officer who hears that case.

        (4)     The Hearing Officer ensures the Disciplinary Report is brought to hearing in accordance with the timeframes established in this policy and ensures the inmate, Adult Counselor, if any, witness(es), evidence, and appropriate forms are available at the scheduled hearing.

    b.      Appearance of the Accused: An accused inmate shall be present at his/her disciplinary hearing:

        (1)     unless the inmate declines to appear;

        (2)     unless the inmate's behavior gives cause for exclusion or removal (**NOTE:** Such behavior must be documented on the Disciplinary Report);

        (3)     except when confidential information is presented as described below, and/or

        (4)     except when the Hearing Officer recesses for deliberation.

(4)     The Hearing Officer may exclude or eject from the disciplinary hearing any person whose behavior poses a threat to an orderly hearing or jeopardizes the safety of any person.  (The Hearing Officer determines the hearing requirements to ensure a professional proceeding.)

(5)     The Hearing Officer documents any denial of witnesses.

f.     Evidence

(1)     Evidence may be physical evidence, urinalysis reports, a written statement or document, and/or oral testimony.

(2)     Copy(ies) of urinalysis report(s) are provided to the inmate at the time s/he is given the Disciplinary Report.

(3)     Physical evidence is presented at the hearing, whenever practicable, as determined by the Hearing Officer. Otherwise, a sample, photograph, laboratory test, or written description of the evidence is presented.

g.     Recordings

The hearing must be recorded. Any recordings made are the property of the Rhode Island Department of Corrections and not released except for administrative or judicial review.  Wardens ensure the recordings are securely stored at the facility for a period of at least four (4) years after the date of the disciplinary hearing.

h.     Presentation of the Case

(1)     The Hearing Officer begins the hearing by reading the statement of charge (infraction) on the Disciplinary Report; identifying him/herself, the inmate Counselor and the inmate, the charge, etc; reviewing the results of the review conducted by the Superior Officer; calling any witnesses; and presenting any evidence available.

(2)     The Hearing Officer may question the inmate and others as necessary.

(a)     All questions are asked in the presence of the accused inmate, except when the source of the information

must be protected or there is reason to believe the accused inmate's presence will be disruptive or intimidating to any witness.

(b)    In those cases, the Hearing Officer documents the nature of the information.

i.    Confidential Information

(1)    Information which is material to the allegation of misconduct may be exempted from disclosure if it places another person in jeopardy or compromises security.

(a)    If the charging employee believes documentary or testimonial information should be exempted from disclosure, s/he presents the information and an assessment of its credibility to the Hearing Officer outside the presence of the accused inmate and the inmate's Adult Counselor.

(b)    The charging employee is not required to disclose the source of the confidential information to the Hearing Officer.

(2)    The Hearing Officer's determination must be based upon some evidence to support the findings made in the disciplinary hearing. [Superintendent v. Hill, 472 U.S. at 445 (1985)].

(a)    At the very minimum, the charging employee must report that the information has been specifically corroborated on all specific material points.

(b)    The Hearing Officer reaches a reasoned conclusion that the information obtained from a confidential source is reliable and, therefore, likely to be true.

(c)    The Hearing Officer makes a record of his/her assessment/determination. This record need not be provided to the inmate if it might identify the confidential source of the information, but must be preserved and made available to any reviewing court.

(3)    If the inmate is found guilty of the offense, the Hearing Officer states, in writing, a summary of the information, an assessment of its reliability, and why it is exempt from disclosure. This statement is maintained in a file (as determined by the Warden/designee) which is not accessible to any inmate.

(4)    If the Hearing Officer determines information is not confidential, s/he may proceed with the hearing or may continue the hearing, at the request of the Hearing Officer or the inmate, to allow the accused inmate time to prepare a defense.

j.    <u>Rebuttal</u>: The accused inmate, through his/her Adult Counselor, may pose a reasonable number of questions to witnesses or rebut evidence and information presented at the disciplinary hearing subject to constraints imposed by the Hearing Officer. The Hearing Officer constrains the rebuttal if it is irrelevant, redundant, or disrupts an orderly hearing.

k.    <u>Defense</u>: If the accused inmate thinks the charge against him/her is untrue (in whole or in part), s/he may present information available to him/her and others. Said presentation includes the right to call a reasonable number of witnesses, both adverse and favorable, and examine said witnesses consistent with Section III.C.6.e. of this policy. Inmates are not permitted to have legal counsel or any representative other than a RIDOC Adult Counselor present at a disciplinary hearing.

l.    <u>Substitute Charge</u>:

(1)    A charge may be substituted by the Hearing Officer at the same, higher or lower level (class) if it becomes apparent the original charge is inappropriate

(a)    The Hearing Officer may substitute a charge during the hearing by informing the accused inmate of the substitute charge and taking a plea.

(b)    A substitute charge renders the original charge dismissed.

      (c)     If the accused inmate pleads "not guilty" to the substitute charge, a continuance may be granted upon the request of either the Hearing Officer or the accused inmate to allow more time for further investigation or defense preparation.

    (2)     The Hearing Officer may also find the accused inmate guilty of a lesser charge or violation of rules than was originally written.

7.     **Expedited Disposition**:  The disciplinary process may be expedited when an accused inmate's release is imminent or when circumstances require the inmate be urgently transferred and it is not practical to conduct a hearing at the receiving facility.  In such cases, an accused inmate must receive the Disciplinary Report, be afforded a chance to prepare a defense including naming witnesses, receive the services of a Adult Counselor if desired, and any hearing must be in conducted in accordance with this Code.

8.     **Transferred Inmate's Disciplinary Process**:  If an accused inmate is transferred prior to disposition of a Disciplinary Report, a Hearing Officer from the sending facility (where accused inmate received the Disciplinary Report) conducts the hearing at the receiving facility (where inmate is serving disciplinary confinement).

9.     **Decision**:

    a.     Upon completion of the hearing, the Hearing Officer takes the matter under advisement.

    b.     The Hearing Officer decides the case on the basis of the hearing record.

    c.     **Options Available to Hearing Officer**:

        (1)     Dismissal of charge

        (2)     Finding of guilt

            (a)     Issuance of reprimand – <u>Only</u> Class 3 and 4 Offenses.

            (b)     Recommendation/Referral to Classification Board for review of classification status.

(c)     Temporary loss of specified privileges within inmate's classification.

(d)     One (1) day to one (1) year in disciplinary confinement, depending on the class of offense.

(e)     Restitution (for willful disfigurement, damage, and/or destruction of state property) (See Section III.F. of this policy.)

(f)     Loss of visits.

(g)     Any combination of (a) through (f) above.

(3)     <u>Substance Abuse-Related Offenses</u>:  Consistent with the most recent version of RIDOC policy 9.36 DOC, <u>Substance Abuse Testing, Sanctions, and Treatment for Inmates under RIDOC Supervision</u>, any offense that is substance abuse-related results in suspension of an inmate's visiting privileges (except for attorneys and clergy), as follows:

| Substance Abuse-Related Offense | Suspension of Visiting Privileges | # Days Disciplinary Confinement |
|---|---|---|
| 1st | 30 days | 21-23 |
| 2nd | 6 months | 24-26 |
| 3rd and subsequent | 1 year | 27-30 |

d.      All substance abuse-related discipline(s) incurred by an inmate since the first day of his/her current period of incarceration or current sentence (including sentences to Home Confinement and including infractions which occurred prior to this policy's effective date) are considered when determining whether an inmate is a first, second, third, or subsequent violator/offender.

e.      When a Parolee violates the terms/conditions of his/her parole and is returned to the Adult Correctional Institutions (ACI), positive substance abuse tests (i.e., "dirty urines") associated with his/her current period of incarceration or current sentence which s/he incurred prior to release on parole, are counted when determining whether the parole violator is a first, second, third, or subsequent substance abuse violator/offender.

f.   The Hearing Officer immediately informs the inmate of his/her decision and any sanction imposed.

g.   The Hearing Officer completes the section of the Disciplinary Report that specifies the infraction for which the inmate was found guilty and its corresponding code number.

10.   <u>Disciplinary Hearing Results:</u>

a.   The Hearing Officer/designee ensures the results of the disciplinary hearing are entered into INFACTS as soon as possible following the hearing.

b.   Disciplinary hearing results are entered into INFACTS and are accessible/available to the following individuals for appropriate action:

(1)   Warden/designee (original);

(2)   Associate Director of Classification/designee (to ensure Classification receives timely notice of all recommendations for changes in status, i.e., downgrades);

(3)   Records and Identification (if not appealed).

<u>NOTE</u>:   Copies of disciplinary hearing results are forwarded to affected inmates and affected staff for appropriate action (e.g., for filing in affected inmates' files).

c.   The Warden/designee may:

(1)   order further proceedings; or

(2)   reduce or suspend any result of the disciplinary hearing unfavorable to the inmate.

11.   <u>Parole</u>:   Counseling staff notifies the Office of the Parole Coordinator of any inmate who has been voted to Parole and is found guilty of a Class 1 (Predatory or Non-Predatory) and/or Class 2 disciplinary offense for which the inmate received ten or more ($\geq$10) days worth of sanctions.   The Parole Coordinator or designee refers the matter to the Parole Board Chairperson for reconsideration.

12. <u>Review of Hearing Officer's Decision by Warden/Designee:</u>

    a.    Whenever an inmate is found guilty of an infraction at a hearing held in said inmate's absence, review by the Warden/designee is automatic.

           In the event the inmate requests a review by the Warden/designee, the Hearing Officer indicates (checks off) that the inmate made the request for review on the Disciplinary Report itself.

    b.    <u>30 Days Disciplinary Confinement or Less</u> – inmates must submit written requests for review within five (5) working days of the disciplinary hearing.

        (1)    Inmates must submit written requests for review of Hearing Officers' decisions to the Warden/Deputy Warden.

        (2)    The Warden/designee responds to the inmate request for a review of the Hearing Officer's decision within five (5) working days of receiving such request.

        (3)    The Hearing Officer makes it clear to the inmate that s/he may request assistance from his/her Counselor or any other individual(s) approved by the Warden/designee when preparing his/her written request.

    c.    <u>More Than 30 Days Disciplinary Confinement</u>

        (1)    Whenever an inmate is found guilty of a Class 1, Highest, Predatory offense, s/he receives more than thirty (>30) days disciplinary confinement for that single infraction.

        (2)    In all such cases, review by the Warden/designee is automatic.

           In the event the inmate requests a review by the Warden/designee, the Hearing Officer indicates (checks off) that the inmate made the request review on the Disciplinary Report itself.

        (3)    While inmates who receive more than 30 days disciplinary confinement for a single Class 1, Highest, Predatory offense

are not required to submit written requests for review, they are strongly encouraged to submit their written comments concerning the incident to the proper reviewing authority within five (5) working days of receiving the Hearing Officer's decision, (Monday – Friday, excluding holidays, Saturdays, and Sundays).

| Disciplinary Confinement Imposed for a Single Class 1, Predatory Infraction | Inmate's Written Comments Concerning the Incident to be Submitted to: |
|---|---|
| 31 days – 3 months | Warden/designee (Deputy Warden) |
| 3 months and 1 day – 1 year | Warden/designee (Deputy Warden) **If denied by Warden /Designee**, to Assistant Director Institutions and Operations |

(4)  The Hearing Officer makes it clear to the inmate that s/he may request assistance from his/her Counselor or any other individual(s) approved by the Warden/designee when preparing his/her written comments.

(5)  As stated above, the inmate must submit his/her written comments within five (5) working days of receiving the Hearing Officer's decision, (Monday through Friday, excluding holidays, Saturdays, and Sundays).

(6)  The Warden/designee responds (in writing) within fifteen (15) calendar days of receipt of the request for review, and disposition is suspended during this period, except where the safety, security, and good order of the facility may be adversely affected.

(7)  If the Warden/designee upholds the decision, or the sanction remains higher than ninety (90) days following the Warden's/designee's review, s/he forwards all pertinent information to the Assistant Director Institutions and Operations (ADIO) for review.

NOTE:   This expanded review process applies to Class 1 Predatory infractions resulting in sanctions of 3 months and 1 day to one (1) year of disciplinary confinement only after the Warden's/designee's review.   Disposition is not suspended during this time.

(8)     The ADIO responds to the inmate (in writing) within twenty (20) working days of receiving the information from the Warden/designee.

d.     If the ADIO is also in agreement with the Hearing Officer's decision, the decision is approved and ordered.

The ADIO must find that some evidence in the record supports the conclusion reached by the Hearing Officer [Superintendent v. Hill, 472 U.S. 445 (1985)].

e.     If the Warden/designee or ADIO does not agree with the Hearing Officer's decision, s/he may order further study, review, and/or hearing; substitute an infraction at the same or lower (**underscoring for emphasis**) level (class); amend the charge; alter or suspend the sanction; or dismiss the Disciplinary Report.

f.     The inmate is notified in writing of any change resulting from the review process.

g.     Following final review/decision, information is available to Records and Identification staff in INFACTS.

NOTE:  Copies of final reviews/decisions are forwarded to affected inmates and affected staff for appropriate action (e.g., for filing in affected inmates' files).

13.   <u>Long-Term Disciplinary Confinement</u>

a.     Long-term disciplinary confinement [in excess of thirty (30) days] may result from:

(1)     a single, Class 1, Highest, Predatory offense;

(2)     multiple Class 1, Highest, Predatory offenses;

(3)     multiple offenses from any of the lower classes of offenses.

b. <u>Administrative Review</u>

(1)    In addition to the review process described in Section III.C.12.c., the Warden/Deputy Warden of any facility that houses inmates serving long-term disciplinary confinement evaluates such inmates every ninety (90) days.

(a)    The Warden/designee considers the appropriateness of continued disciplinary confinement.

i.    S/he may recommend to the ADIO that all or part of an inmate's remaining disciplinary confinement be commuted, and the inmate return to his/her current classification or be placed on Administrative Restrictive Status (ARS);

The Warden/designee may require the inmate to participate in available programs while on Administrative Confinement so that s/he acquires the skills necessary to successfully live in general population, and ultimately, in society.

ii.    If the inmate's behavior to date does not warrant a recommendation to commute all or part of his/her remaining disciplinary confinement, the Warden/designee may suggest to the inmate that s/he comply with a particular set of conditions (e.g., remaining "booking free") for a specified period of time, resulting in:

(a)    limited privileges (e.g., program participation) while serving his/her remaining disciplinary confinement;

(b)    an early review (i.e., before the next regularly scheduled 90-day review).

        iii.    The Warden/Deputy Warden may decide the inmate should remain on his/her current status.

    (2)    The Warden notifies the ADIO of the outcome of <u>each</u> administrative review and the reason(s) for his/her determination <u>whether or not</u> the Warden recommends a change in status.

c.    <u>Medical Evaluation of Inmates in Long-Term Disciplinary Confinement</u>

    (1)    All inmates who are separated from the general population (for administrative and/or disciplinary confinement) have access to Health Care Services staff, services, and facilities.

    (2)    Consistent with the most recent version of RIDOC policy 18.43 DOC, Health Evaluation of Inmates in Administrative/ Disciplinary Confinement, Wardens/designees ensure:

        (a)    Such inmates are seen by Health Care Services staff at specified intervals (i.e., nursing staff "trip" disciplinary confinement areas daily); and

        (b)    Such encounters are documented in the inmates' Electronic Medical Records (EMR).

d.    <u>Mental Health Evaluation of Inmates in Long-Term Disciplinary Confinement</u>

Behavioral Health Care staff assessments are made as clinically appropriate; however, evaluations are conducted by behavioral health professionals at no less than the following **<u>minimum</u>** intervals:

    (1)    On the first business day following an inmate's thirtieth (30th) consecutive day in disciplinary confinement.

    (2)    At least once every thirty (30) days thereafter or before.

    (3)    Such encounters are documented in the inmate's electronic medical record (EMR).

**NOTE**:  Staff shall notify Behavioral Health Services staff and request evaluation if the inmate shows signs of mental illness and/or deterioration in behavior.

Staff should refer to the most recent version of RIDOC policy 18.43 DOC, <u>Health Evaluation of Inmates in Administrative/Disciplinary Confinement</u>, for more detailed information.

14.  <u>Disciplinary Report Numbering System</u>:  Each Disciplinary Report being entered into INFACTS is automatically numbered.

15.  <u>Records</u>: Disciplinary Reports are maintained in INFACTS and contain:

    a.  A summary of all information produced at the hearing, including:

        (1)  testimony of all witnesses;

        (2)  written summary of investigation report; and

        (3)  nature of the testimony and any unidentified informant(s).

    b.  Physical Evidence Viewed

        (1)  If a Disciplinary Report is generated by or referred to Special Investigation Unit (SIU) or Office of Inspectors (OI), copies of any materials used during the hearing are not forwarded with the original Disciplinary Report. SIU or OI makes evidence available for review by the Warden/designee.  The decision to retain or destroy such evidence rests with the appropriate investigatory unit, in accordance with the most recent version of RIDOC Policy 9.16 DOC; <u>Procedure for Protecting, Gathering, and Preserving Evidence</u>.

            **NOTE**:  Consistent with Section III.C.6.g, recordings of disciplinary proceedings are maintained for a period of at least four (4) years.

        (2)  The Hearing Officer makes his/her assessment of the evidence, and the evidence is presented to the Warden or designee during the review process.

(3)   After all materials are reviewed, the physical evidence remains in the custody of the office in the unit where the Disciplinary Report was initiated, where it is filed in a secure area. (For more information, please refer to the most recent version of RIDOC Policy 9.16 DOC, Procedure for Protecting, Gathering and Preserving Evidence.)

(4)   If it is not practical to retain evidence (needles, razors, etc.), photographs, and/or written description(s) are substituted.

c.   Findings of fact and the supporting reasons for the disposition decided upon.

d.   Rationale for change in disposition upon review by Warden/designee.

e.   If the Hearing Officer finds an inmate "not guilty" or the Disciplinary Report (booking) is dismissed [including those dismissed for mental health reasons; see Section III.C.2.e.(2)(a) in this policy], the booking remains in the INFACTS system for statistical purposes.

16.   Technical Mistakes and Serious Process Failures:  Technical mistakes in the disciplinary process, including minor discrepancies in meeting time frames, are not cause for the reversal or dismissal of a Disciplinary Report.  A serious process failure may result in dismissal by the Hearing Officer, Warden, or ADIO.

a.   Technical Mistake - a mistake that does not affect the fairness and impartiality of the process.

b.   Serious Process Failure - a failure that affects the fairness and impartiality of the process.

D.   Out-of-State Inmates

For Rhode Island inmates serving their sentences out-of-state, the receiving states forward their bookings to applicable RIDOC staff (e.g., the Records Unit Office Manager).

Records Unit staff enters bookings into INFACTS so that affected inmates' good time earnings are processed accordingly.

Case 1:17-mc-00014-JJM-PAS   Document 89   Filed 11/30/21   Page 41 of 49 PageID #: 793

E. <u>Restitution</u>

1. If a RIDOC Hearing Officer finds an inmate guilty of willful disfigurement, damage, and/or destruction of state property, s/he may order the inmate to pay restitution based on a written estimate.

2. Whenever restitution is ordered, the inmate receives a copy of the <u>Restitution Order</u> from the Hearing Officer who found the inmate guilty of willful disfigurement, damage, and/or destruction of state property and ordered restitution.

   a. A written estimate for materials and labor must be available. The facility Administrator or designee obtains the estimate from RIDOC's Maintenance Unit.

   b. <u>Challenge of restitution amount</u>: Inmates may challenge the reasonableness of restitution ordered to cover the cost of repair/replacement parts and labor by submitting a written request to the Warden/designee.

      (1) This challenge does not include the right to obtain and submit additional or competitive estimates.

      (2) Challenges must be submitted within five (5) working days (weekends and holidays excluded) following receipt of the Hearing Officer's decision.

3. <u>Collection</u>

   a. The Hearing Officer sends the restitution order to Inmate Accounts, which serves as the collector.

   b. Any and all charges against an inmate's account that are court-ordered are given priority over restitution.

   c. The amount of restitution is deducted from the available (active) balance in the inmate's account.

   d. If the inmate's available (active) balance is not sufficient to meet the restitution amount:

      (1) All but ten dollars ($10.00) will be withdrawn from the active account;

(2)    The balance owed is charged as a debt to the inmate's account;

(3)    One-half (1/2) of all subsequent deposits are used to offset this debt until the charges are paid in full;

(4)    There are no restrictions on the other half of the deposits beyond normal restrictions.

e.    Any debt remaining at the time of an inmate's release from institutional custody is considered a legal debt and is subject to civil remedy by the State.

f.    If this individual returns to institutional custody before repayment of this debt, his/her inmate account reflects any unpaid debt from prior incarceration(s).

F.    <u>Exceptions</u>:

Any exceptions to the procedures in this policy require prior written approval from the Director or his/her designee.

### RHODE ISLAND DEPARTMENT OF CORRECTIONS

### DISCIPLINE SEVERITY SCALE

This list is not all inclusive. RIDOC reserves the right to charge an inmate with any other offense prohibited by law or prison rule, at a Category or level to be determined by the Director or his/her designee.

**NOTE**: Any attempt, conspiracy, and/or accessory of any offense is coded at the same level on the Discipline Severity Scale as the actual offense, except where otherwise noted by separate codes/offenses for attempt, conspiracy or accessory.  Attempt, conspiracy, and accessory are defined as:

1. Attempt:  Conduct which makes an effort to accomplish an act prohibited by the most recent version of RIDOC policy 11.01 DOC, Inmate Code of Discipline.

2. Conspiracy:  Agreeing with one or more persons to participate in an act prohibited by the most recent version of RIDOC policy 11.01 DOC, Inmate Code of Discipline and one of those persons acts in furtherance of the conspiracy.

3. Accessory:  Assisting a person to commit an act prohibited under the most recent version of RIDOC policy 11.01 DOC, Inmate Code of Discipline or to hide the evidence that such an act was committed.

| CLASS 4, LOW MODERATE | |
|---|---|
| *Sanction: Discipline less than disciplinary confinement; up to 5 days loss of privileges* | |
| Code | Offense |
| | CONTRABAND |
| 401 | Using an authorized item for something other than its intended purpose without any threat to security (e.g., Possessing or Using Homemade Speaker Cones) |
| 414 | PASSING Category 2 Contraband |
| 415 | POSSESSING Category 2 Contraband |
| 416 | RECEIVING Category 2 Contraband |
| 417 | Taking Unauthorized Food from the Dining Room or Kitchen |
| | DISOBEDIENCE |
| 402 | Not Making Bunk Properly |
| 403 | Failing to Display Inmate Identification Badge |

| 404 | Fishing |
|-----|---------|
| 405 | Littering |
| 406 | Not Being Properly Dressed |
| 410 | Untidy Cell or Room |
| 411 | Not following housing unit/area rules |
| 412 | Poor job performance |
| 413 | Violating Unit/Dorm Rules failing to abide by a published rule |
| 418 | Cutting Any Line (med, infirmary, meal, etc.) |
| 419 | Failing to Shower and Maintain Personal Hygiene |
| 420 | Loitering or Being in an Area Longer than Necessary to Accomplish an Authorized Task |
| 421 | Malingering; Feigning an Illness or Injury |

**CLASS 3, MODERATE**

*Sanction: Discipline less than disciplinary confinement; 3-15 days loss of privileges*

| Code | Offense |
|------|---------|
| | **CONTRABAND** |
| 301 | Failing to Report the Presence of Contraband |
| 305 | Possessing Another Inmate's Identification Badge |
| 306 | Possessing Unauthorized Currency of Five Dollars ($5.00) or Less |
| 346 | Possessing Another Inmate's Legal Material |
| 350 | Excessive commissary items with validation (receipts) |
| 351 | Possession of More Than $35.00 (Work Release inmates) |
| 352 | Possession of More Than $10.00 in Quarters or in Possession of Paper Currency (Minimum Security inmates) |
| | **DISOBEDIENCE** |
| 308 | Being in an Unauthorized Area |
| 309 | Being on a Bed Other Than the One Assigned |
| 310 | Conducting a Non-Criminal Business |

| 311 | Cutting Any Line (med, infirmary, meal, etc.) |
| 312 | Disobeying a Lawful Order Not Pertaining to Custody or Control Enforcement (e.g., refusing to work) |
| 313 | Disorderly Conduct/Disobeying housing unit/area/behavior rules - any nuisance or annoying behavior that interferes with the facility's/unit's order |
| 315 | Excessive Kissing and/or Caressing at the Beginning or End of a Visit |
| 316 | Failing to Comply with Count Procedures Within the Confines of a Cell Housing 2 or Fewer Inmates |
| 318 | Failing/Refusing to Comply with Telephone Procedures (e.g., using another inmate's PIN number to make calls) |
| 319 | Failing to Report to Required Destination without Proper Authorization or Valid Reason |
| 324 | Horse playing; Roughhousing |
| 325 | Making Indecent Gestures |
| 326 | Loitering on Tiers, Next to Cells, in Stairways, and/or in Bathrooms |
| 328 | Making any Fraudulent Request (e.g., check request, commissary order, etc.) to Circumvent Established Rules, Regulations, and/or Procedures |
| 329 | Making Credit Contract in any Form |
| 331 | Misusing Electronic Equipment and/or Computers and/or Related Devices |
| 333 | Obstructing Cell Vents |
| 335 | Refusing to Cooperate in Following a Prescribed Course of Treatment (for example, inmate with broken hand told to refrain from yard exercise) |
| 336 | Refusing to Submit to Mandatory Medical Testing |
| 338 | Making Unauthorized Contact with the Public |
| 339 | Using any Authorized Equipment or Machinery Contrary to Instructions or Posted Safety Standards |
| 340 | Using Any Equipment or Machinery that is not Specifically Authorized |
| 347 | Failing to Attend Mandatory School/Program(s) |
| 348 | Purchasing Anything on Credit |
| 349 | Theft of Services (e.g., photocopies, cable TV, or other facility services) |
| 354 | Failing to Comply with Mail Procedures |

| 126 | Physically Surrounding or Preventing the Passage of Any Staff/Visitor |
|---|---|
| 127 | Recruiting for a Gang |
| | **OTHER** |
| 153 | Any violation of local/state/federal law NOT specifically mentioned elsewhere in this RIDOC Discipline Severity Scale. |
| | **SEXUAL** |
| 129 | Making Sexual Proposals or Threats to Another |
| 130 | Willingly Engaging in Sexual Acts with Others (e.g., Sodomy)(violation of no-touch policy) |
| 155 | Fondling Adult Visitor (specifically, the fondling of breasts and/or genitalia) |
| 156 | Indecent Exposure |
| | **SUBSTANCE ABUSE** |
| 131 | Being Intoxicated (by Homemade or Purchased Intoxicants) |
| 132 | Being Under the Influence of Alcohol |
| 133 | Being Under the Influence of Drug(s) that Were Not Prescribed by a Facility Physician and/ or are Not Authorized Under RIDOC's Keep-on-Person Medication Program |
| 134 | Failing or Refusing to Submit to a Breathalyzer Test |
| 135 | Failing or Refusing to Submit to any Substance Abuse Related Test(s) Deemed Acceptable by RIDOC Officials. SPECIFY TEST: |
| 136 | Failing or Refusing to Supply a Urine Specimen for Testing |
| 137 | Intentionally Altering a Urine Specimen |
| 160 | Circumventing urine procedures |
| | **SUBSTANCE POSSESSION** |
| 139 | Possessing Alcohol |
| 140 | Possessing Drug Paraphernalia (e.g., Rolling Papers, Needles, Pipes, Syringes, etc.) |
| 141 | Possessing Drugs that Were Not Prescribed by a Facility Physician and/or are Not Authorized Under RIDOC's Keep-on-Person Medication Program |
| 142 | Possessing Homemade or Purchased Intoxicants |
| 157 | Hoarding Medication |

| | VANDALISM |
|---|---|
| 143 | Tampering With a Security Device and/or Locking Device |
| 144 | Tampering With Fire Alarms, Fire Equipment, and/or Fire Suppressant Equipment |
| | VIOLENCE |
| 145 | Altering Any Property to Make Any Weapon(s) |
| 146 | Contraband finds of weapons [formerly Possessing Any Weapon(s)] |
| 147 | Possessing Any Flammable/Explosive Substance(s) |
| 148 | Setting a Fire For Purposes Including But Not Limited to Cooking in Cell, Burning of Incense, etc. |
| 149 | Threatening an Employee or His/Her Family with Bodily Harm (Threats that are investigated and reported to the Office of Inspections/Special Investigations Unit) |
| 150 | Threatening, Harassing, or Interfering with a RIDOC K-9 or service dog in training |
| 151 | Threatening, Harassing, or Unauthorized Contact with any other person (including, but not limited to staff members, their families, victims, public officials, law enforcement officers) |
| 152 | Any action that results in unintended physical harm/injury to another person (example: A baseball bat, that was thrown to the ground in anger following a third strike, bounces off) |
| 159 | Fighting (inmate on inmate) with serious injury resulting |
| 161 | Fighting (inmate on inmate) that did not involve serious injury (fight was part of multiple fight incident or inmates refused to comply with staff commands to stop fighting) |
| | CLASS 1, HIGHEST, PREDATORY |
| | *Sanction: 31 days - 1 year disciplinary confinement* |
| Code | Offense |
| | ESCAPE |
| P06 | Escape from Escorted Custody |
| P07 | Escape From a Secure Facility |
| P16 | Escape from outside a secure DOC facility |
| P17 | Attempt, Accessory or Conspire to Escape from outside a secure DOC facility |
| P18 | Attempt, Accessory or Conspire to Escape from a Secure Facility |
| P19 | Attempt, Accessory or Conspire to Escape from Escorted Custody |

| | SEXUAL |
|---|---|
| P20 | Inmate on Civilian completed non-consensual sexual acts |
| P21 | Inmate on Civilian attempted non-consensual acts |
| P22 | Inmate on Civilian abusive sexual contact (does not include minor visitors) |
| P23 | Inmate on Inmate completed non-consensual sexual act |
| P24 | Inmate on Inmate attempted non-consensual sexual acts |
| P25 | Inmate on Inmate abusive sexual contact |
| P26 | Inmate on Staff completed non-consensual sexual acts |
| P27 | Inmate on Staff attempted non-consensual acts |
| P28 | Inmate on Staff abusive sexual contact |
| P29 | Fondling or improper sexual contact with a minor visitor |
| | VIOLENCE |
| P01 | Arson - purposely setting fire to a building or property |
| P02 | Assault with a Weapon on Staff  with serious injury resulting |
| P03 | Assault with a Weapon on an Inmate with serious injury resulting |
| P30 | Assault with a weapon on Civilian with serious injury resulting |
| P31 | Assault with a weapon on Staff that did not involve serious injury |
| P32 | Assault with a weapon on Civilian that did not involve serious injury |
| P33 | Assault with a weapon on an Inmate that did not involve serious injury |
| P34 | Assault on Staff that did not involve serious injury |
| P35 | Assault on an Inmate that did not involve serious injury |
| P36 | Assault on Civilians (volunteers, interns, visitors, consultants, researchers etc.) that did not involve serious injury |
| P37 | Assault on Staff with serious injury resulting (to include assaults by throwing liquid, blood, waste, chemicals and/or urine) |

| | |
|---|---|
| P38 | Assault on an Inmate with serious injury resulting (to include assaults by throwing liquid, blood, waste, chemicals and/or urine) |
| P39 | Assault on Civilians (volunteers, interns, visitors, consultants, researchers etc.) with serious injury resulting (to include assaults by throwing liquid, blood, waste, chemicals and/or urine) |
| P04 | Assault on Staff  by throwing substances (to include spitting and/or throwing bodily fluids) that <u>did not</u> involve serious injury |
| P05 | Assault on an Inmate by throwing substances(to include spitting and/or throwing bodily fluids) that <u>did not</u> involve serious injury |
| P40 | Assault on Civilians (volunteers, interns, visitors, consultants, researchers etc.) by throwing substances (to include spitting and/or throwing bodily fluids) that <u>did not</u> involve serious injury |
| P08 | Extortion/Blackmail - obtaining money, property, or favors from someone by violence or the threat of violence |
| P09 | Hostage-taking |
| P10 | Kidnapping |
| P12 | Mayhem - Inflicting or Attempting to Inflict Any Injury Which Disfigures, Disables, and/or Dismembers Another Inmate |
| P41 | Mayhem-Inflicting or Attempting to Inflict any Injury which Disfigures, Disables, and/or Dismembers a Staff member |
| P42 | Mayhem-Inflicting or Attempting to Inflict any Injury which Disfigures, Disables, and/or Dismembers a Civilian |
| P13 | Rioting or Inciting Others to Riot |
| P14 | Robbery - taking property from a person, or in his/her presence, when the taking is by means of violence or intimidation |
| P43 | Trafficking In Illicit Substances (Resulting from Investigation, inmate(s) had an organized effort to convey the substance throughout the facility, or distribute to other inmates, and profit from the operation.) |
| P44 | Possession of a cell phone |
| P45 | Inmate on Inmate Homicides |
| P46 | Inmate on Staff Homicides |
| P47 | Inmate on Civilian Homicides |